839 So.2d 940 (2003)
Lawrence MOORE,
v.
Terry WARE, Chairman of the West Monroe Fire and Police Civil Service Board.
No. 2001-C-3341.
Supreme Court of Louisiana.
February 25, 2003.
*942 Douglas C. Caldwell, West Monroe, Fredric C. Amman, Monroe, for Applicant.
Carl D. Walker, Monroe, for Respondent.
KNOLL, Justice.
This case involves the review of a municipal civil service board's decision, affirming the denial of promotion for a municipal police officer. We are presented with questions of appellate review of facts, procedural due process, and equal protection. Finding that plaintiff failed to make a prima facie showing of racial discrimination and that the civil service board's decision was made in good faith and for legal cause, the record does not support that the appointing authority acted arbitrarily or capriciously, or as a result of prejudice. Accordingly, we reverse.

FACTS AND PROCEDURE
Prefatorily, we note that although this case involves numerous procedural matters which span a number of years, including hearings at the civil service board level, appeals and remands to the district court and the appellate court, and writ applications to this Court, all of which tend to be confusing, the facts are well developed in the record. When the facts are extracted from the proceedings, a good chronology of events emerges and the issues are easily placed into perspective.
On January 21, 1997, Lawrence Moore, a black police officer employed in the West Monroe Police Department (WMPD) since 1988, was notified he passed the written Sergeant's test, a prerequisite for promotion to that position. Even though there was no opening for a sergeant in the police department at that time, the WMPD advised Moore he was at the top of the promotion list for that position.
Not long thereafter, Moore was provisionally promoted to sergeant for a three or four month period beginning on March 5, 1997, when Major Bobby Avery, a superior officer, went on sick leave. At that time, other superior officers moved up to take over the Major's position and the now vacated Captain's position. Moore assumed the provisional post of Sergeant, the last vacant position. Moore was the only black officer involved in this reshuffling of personnel.
During the time Moore served as provisional Sergeant, particularly on July 11, 1997, Larry Laborde, the Chief of Police for the West Monroe Police Department, implemented a policy that any officer who had not successfully completed all aspects of the department's physical fitness test would be ineligible for promotion and would be unavailable for extra duty details.
*943 Shortly thereafter, on July 22, 1997, Major Avery left the police department amid controversy over his use of sick leave. The Sergeant's position, which Moore had provisionally filled, then became permanently vacant with Major Avery's departure.
On August 14, 1997, Moore, who was 35-years of age, 6-feet, 1-inch tall, and weighed 355 pounds, was examined by Dr. William D. Smith, Jr., a cardiologist, as part of a physical examination for the police department. Dr. Smith described Moore as morbidly[1] obese. Medical examination revealed Moore suffered from hypertension, shortness of breathe with moderate exertion, and he endured knee pain and bilateral foot and heal pain with exercise that required analgesic medications. After administering a stress test,[2] Dr. Smith allowed Moore to proceed with the police department's physical fitness test. On September 10, 1997, Captain Stan Hayden, a WMPD training officer, administered the department's physical fitness test. Moore failed the test which consisted of push-ups, sit-ups, and completion of an obstacle course; each of these tests required completion within a fixed time.
Initially, Chief Laborde passed over Moore for promotion, the officer at the top of the promotion list, and offered the Sergeant's position to another officer because he was under the impression Moore did not want the Sergeant's slot and because Moore had recently failed the physical fitness test. Notwithstanding, when Chief Laborde presented the other officer's name to the West Monroe Fire and Civil Service Board (Board) for approval of promotion on October 14, 1997, the Board determined that Moore had been improperly passed over for the position. At that time, the Board ordered Chief Laborde to make an offer of promotion to Moore, subject to the physical fitness standards, and to provide the Board with a letter concerning his disposition of the matter. Chief Laborde complied with the Board directive and provided such a letter on October 27, 1997, detailing that Moore was passed over for Sergeant because he failed the medical and physical fitness exams.
By letters dated October 28, 1997 and November 11, 1997, directed to the Board, Moore appealed the administrative decision to pass him over for promotion. Moore contended the administrative decision violated civil service law and was in contravention of the Board's rules and regulations.
At the Board meeting of February 18, 1998, Moore, accompanied by legal counsel, explained he had not pressed for a more immediate hearing because there had been vacancies on the Board. He further asserted that it was his contention that he could not be passed over for promotion because the physical fitness test was not part of the class plan.[3] Moore's *944 appeal was scheduled for the next month's meeting.
The Board met on March 4, 1998, to hear Moore's appeal. After some discussion, mainly involving the nature of Moore's appeal (it appears the Board had not received Moore's more detailed second letter of appeal), the Board again directed Chief Laborde to offer Moore the position of Sergeant, if he was able to pass the medical and physical fitness examinations. Moore accepted the Board's offer without conceding his contention that the class plan did not include the successful completion of a physical fitness test.
On April 3, 1998, Captain Hayden again administered the physical fitness test to Moore. At that time Moore was able to pass the push-up and sit-up portions of the test, but he was unable to successfully complete the obstacle course within the prescribed time limit. As noted by Captain Hayden, instead of completing the obstacle course in 2 minutes 30 seconds, it took Moore 3 minutes 12 seconds.
After his failure to meet the conditions of the offer of promotion made to him during the March 4, 1998, Board hearing, Moore appealed to the district court. The district court then remanded the matter to the Board, finding it needed a more complete hearing at the Board level to fully consider the contentions Moore raised in his earlier appeal to the Board. The Second Circuit Court of Appeal denied Moore's attempt to appeal the district court decision, (La.App. 2 Cir. 2/25/99) (unpublished), and this Court denied Moore's writ application on this issue. Moore v. West Monroe Fire and Civil Service Bd., 99-834 (La.5/7/99), 740 So.2d 1287.
On October 27, 1999, the Board held a hearing as directed by the district court. At the outset of the meeting, counsel for Moore outlined three issues for consideration: (1) whether it is was proper for Moore to be passed over for promotion when he was the most senior officer on the list for promotions; (2) did the class plan for promotion to Sergeant include a requirement that the candidate pass a physical fitness test; and (3) whether the failure to promote Moore was racially discriminatory, an issue raised for the first time. We note that Moore has never objected to the appropriateness of the physical fitness standards or the way the tests are administered. After conducting an evidentiary hearing, the Board ruled in favor of the WMPD, the appointing authority.[4]
Thereafter, on August 24, 2000, Moore appealed the Board's ruling to the district court. On motion of the Board and the City, Moore's appeal was consolidated with the one he earlier filed on March 4, 1998.[5] As detailed in Moore's petition for appeal to the district court, Moore questioned whether the decision of the Board was arbitrary and capricious or without lawful cause in finding that: (1) Moore was not denied promotion through the retroactive application of new physical fitness requirement; (2) Moore was not denied promotion through the use of criteria not part of the class plan; (3) Moore was not denied promotion through the arbitrary and capricious use of a physical fitness test; and (4) *945 in refusing to give Moore a hearing within 30 days as provided in LA.REV.STAT. ANN. § 33:2501(A)[6].
We note Moore's petition for appeal to the district court did not allege racial discrimination. Although Moore also mentioned his hearing was not held within 30 days, this point was not developed at his hearing. There is likewise no mention that Moore or his counsel ever objected to the delay nor is it shown that this delay prejudiced him. On March 29, 2001, after consideration of the issues in light of the record developed before the Board, the district court sustained the decision of the Board.
The court of appeal reversed the district court, finding the Board's decision was arbitrary and capricious. Moore v. Ware, 35,275 (La.App. 2 Cir. 10/31/01), 800 So.2d 99. In reaching that determination, the appellate court found a violation of procedural due process because Moore was required to meet a physical fitness requirement not part of the class plan. It further found that even if a physical fitness test was part of the class plan for promotion, its "random and discriminatory application... to the first black officer to come up for promotion while withholding such a requirement from all the white officers who had previously come up for promotion, [constituted a] violation of Moore's rights under the Equal Protection Clause of the Constitution, and a naked attempt to subvert the civil service system of promotion by seniority." Moore, 800 So.2d at 105.
We granted the writ application of the Board and the WMPD to consider the propriety of the appellate court decision. Moore v. Ware, 01C3341 (La.10/14/02), 827 So.2d 408.

DISCUSSION
The WMPD and the Board contend the appellate court's misconstruction of the facts, particularly the correct chronology of events, and its substitution of its appreciation of the Board's findings of fact skewed the reviewing court's analysis. They argue that from at least January 17, 1995, an officer's successful demonstration of physical fitness sufficient to perform the essential duties of the position has been a requirement for admission to work in the promotional class of Police Sergeant. In addition, they contend Moore failed to carry his burden of persuasion in showing that the denial of his promotion was racially motivated.
Standards for Judicial Review
An employee under classified service may appeal from any decision of the civil service board that is prejudicial to him. LA.REV.STAT. ANN. § 33:2501(E)(1). Such an appeal shall be taken to the district court wherein the civil service board is domiciled. Id. This hearing "shall be confined to the determination of whether the decision made by the board was made in good faith for cause" and "[n]o appeal shall be taken except upon these grounds." LA. REV.STAT. ANN. § 33:2501(E)(3).
If made in good faith and statutory cause, a decision of the civil service board cannot be disturbed on judicial review. Smith v. Municipal Fire & Police Civil Service Bd., 94-625 (La.App. 3 Cir. 11/02/94), 649 So.2d 566; McDonald v. City of Shreveport, 655 So.2d 588 (La.App. 2 Cir.1995). Good faith does not occur if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency. Martin v. City of St. Martinville, 321 So.2d 532 (La. *946 App. 3 Cir.1975), writ denied, 325 So.2d 273 (La.1976). Arbitrary or capricious means the lack of a rational basis for the action taken. Shields v. City of Shreveport, 579 So.2d 961, 964 (La.1991); Bicknell v. United States, 422 F.2d 1055 (5 Cir.1970). The district court should accord deference to a civil service board's factual conclusions and must not overturn them unless they are manifestly erroneous. Shields v. City of Shreveport, 565 So.2d 473, 480 (La.App. 2 Cir.), aff'd, 579 So.2d 961 (La.1991). Likewise, the intermediate appellate court and our review of a civil service board's findings of fact are limited. Shields, 579 So.2d at 964. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. Id.; City of Kenner v. Wool, 433 So.2d 785, 788 (La.App. 5 Cir. 1983).

DUE PROCESS
The appellate court premised its due process analysis on a finding that the offer of promotion to Moore was invalid because it was based on the false premise that the successful completion of a physical fitness test was required for promotion. The Board and the WMPD counter by asserting that although no promotion was denied prior to July 11, 1997, because of the results of physical fitness testing, such a requirement for promotion existed since at least 1995. They further point out that the implementation of physical fitness testing as a prerequisite to promotion occurred prior to the vacancy in the Sergeant's position and has been required for all WMPD promotions since July 11, 1997.
The threshold question: Physical Fitness Requirements
The appellate court determined the Board had not yet established a requirement that an officer must pass a fitness test before promotion at the time the Sergeant's position became open. In support of this determination, the reviewing court found this requirement was still before the Board on September 2, 1997, and October 27, 1997, months after Moore was first eligible for permanent promotion to Sergeant.
It is undisputed the city of West Monroe created a municipal fire and police civil service board pursuant to the authority LA.REV.STAT. ANN. § 33:2471. It is likewise accepted among the parties to this litigation that the WMPD has three positions based upon seniority, Sergeant, Captain, and Major. Under such a system, the person with the longest term of service who attains a passing score on the appropriate written examination and who meets the minimum qualifications at the time the position becomes available is able to promote to that position. The requirements are delineated in the class plan for the position.
LA.REV.STAT. ANN. § 33:2493 provides, in pertinent part:
D. Special requirements or qualifications for admission to tests, or for eligibility for appointment, such as age, education, physical requirements, etc., may be established by the rules adopted by the board, after consultation with the appointing authority. Any applicant must be, at the time of his appointment to a position in the classified service, of good health, good moral character, and of temperate and industrious habits.
E. The board may reject the application of any person for admission to tests of fitness, or refuse any applicant to be tested, or may cancel the eligibility of any eligible on any employment list, who
(1) Is found to lack any of the qualifications prescribed, or which may be legally prescribed, as requirements for admission to the tests for the class for which he has applied;

*947 (2) Is physically unfit to perform effectively the duties of a position of the class;
It is uncontested that since January 17, 1995, the promotional class for Police Sergeant for the WMPD, as adopted by the Board, has been as follows:
SPECIAL REQUIREMENTS FOR ADMISSION TO ELIGIBILITY TEST AND FOR BEGINNING WORK IN CLASS.
Must be a regular and permanent employee in good standing in the class of Police Officer.
After offer of promotion, but before beginning work in this class, must pass a medical examination prepared and administered by the Appointing Authority, designed to demonstrate good health and physical fitness sufficient to perform the essential duties of the position, with or without accommodation;
Must meet all other requirements specified in paragraph 23 of the Municipal Fire and Police Civil Service Law.
The record shows that on January 1, 1992, the WMPD adopted the fitness standards approved by the U.S. Department of Justice and fitness programs and methods based upon the research of the Cooper Institute, for aerobic research.[7] Although the record bears out that the WMPD has used physical fitness tests for many years,[8] it also shows that prior to July 11, 1997, these tests, though clearly provided in the class plan, were not enforced as a prerequisite to promotions. Notwithstanding, on July 11, 1997, Chief Laborde provided the members of the police department with a memorandum stating that "officers who do not meet fitness standards set in this [physical fitness] policy will not be eligible for promotion" and that "[m]edical exams and fitness tests will be given prior to promotion." On July 15, 1997, Moore and each officer in the department signed a document indicating that he received a copy of the physical fitness policy which provided:
A. Promotions. No police officer shall be promoted in rank who has not passed the fitness requirements for promotion as follows:
After an offer of promotion has been given, but before beginning work in the new job, the officer must pass a medical examination prepared and administered by the Appointing Authority (Chief of Police), designed to demonstrate good health and must pass the fitness tests in accordance with this policy. Only then will the promotion offer become valid and the working test period will begin. If the officer fails to maintain a passing score on the fitness tests during the working period, the officer will be demoted and returned to the previous rank. Officers who are showing improvement in their fitness tests, but who have not passed their latest test will also not be eligible for promotion and must pass the fitness tests to become eligible.
The Sergeant's position in the WMPD became available on July 22, 1997.
At this point, we find it necessary to comment on the reviewing court's appreciation of the record, particularly its understanding of the Board meetings of September *948 2, 1997 and October 14, 1997. In its assessment of the due process issue, the reviewing court concluded that its appreciation of the facts showed that after the Sergeant's position became vacant the Board was still discussing whether the regulations required an officer to pass a fitness test before being promoted. Certainly, if this were the case, such a rule could not be applied retroactively to disqualify Moore from a promotion. However, the minutes of these meetings do not support this conclusion.
The minutes of the meetings of September 2 and October 14, 1997, show the question of physical fitness requirements was discussed. However, the only aspect of this issue before the Board was the question of whether a police officer would have to successfully complete the physical fitness test prior to being eligible to take the written promotional exam and whether the class plan would have to be amended to reflect this discrete requirement. As to Moore, this issue was moot because he had already successfully completed his written promotional test without first having to complete the physical fitness test.
The court of appeal also drew an incorrect factual finding that the Board discussed that Moore had been passed over for promotion at its September 2, 1997, meeting. It is important to note that the minutes of the Board's September 2 meeting do not show the Board even discussed that Chief Laborde had passed over Moore for promotion. Although the October 14 meeting was basically a continuation of the September 2 meeting, the propriety of requiring the successful completion of a physical fitness test for promotion was not mentioned. However, it was at this latter meeting that the Board did learn that Moore had been passed up for promotion and took action to further investigate this issue. At this juncture Moore had not yet appealed.
Due process: disposition
The Due Process Clause provides that the right to life, liberty and property cannot be deprived except pursuant to constitutionally adequate procedures. U.S. CONST. amend. XIV; LA. CONST. ANN. art. X, § 8(A). A due process claim in the context of civil service employment depends upon an employee having a property right in continued comparable employment. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Tenured or classified civil service status is a property right and cannot be taken away without due process. See LA. CONST. ANN. art. I, § 2; Wilson v. Jefferson Parish, 95-470 (La.App. 5 Cir. 1/17/96), 668 So.2d 1167, writ denied, 96-413 (La.4/19/96), 671 So.2d 927; Bell v. Department of Health and Human Resources, 483 So.2d 945 (La. 1986), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986).
In the present case, it is undisputed that Moore had obtained permanent status in the classified civil service with the WMPD and he was the senior officer on the promotional list for the position of sergeant. Accordingly, it is clear he possessed a property right of which he cannot be deprived without cause and procedural due process. LA. CONST. ANN. art. X, § 8(A); Office of Youth Services v. Savoie, 569 So.2d 139, 141 (La.App. 1 Cir.1990).
Due process is a flexible standard and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). As the United States Supreme Court noted in Loudermill, "the right to due process is conferred not by legislative grace, but by constitutional guarantee." Loudermill, 470 U.S. at 541, 105 S.Ct. 1487 (quoting Arnett v. Kennedy, 416 U.S. 134, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)). Although *949 a state may establish certain statutory procedural safeguards to protect property rights, the safeguards may still be judged insufficient (depending on the facts and circumstances of a particular case) to guard the particular property interest at risk. Loudermill, 470 U.S. at 541, 105 S.Ct. 1487.
"[The] central meaning of procedural due process is well settled. Persons whose rights may be affected are entitled to be heard; and in order that they may enjoy that right, they must first be notified." Wilson v. City of New Orleans, 479 So.2d 891, 894 (La.1985). Correlatively, this right to notice and opportunity to be heard must be extended at a meaningful time and in a meaningful manner. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).
After thoroughly reviewing the facts presented to the Board, it is clear Moore was: (1) apprised of the appointing authority's enforcement of a promotional requirement that had been in existence since 1995 but theretofore unenforced;[9] (2) this apprisal came prior to the vacancy in the Sergeant's position;[10] and (3) he was allowed opportunities to advocate his contrary appreciation of this prerequisite to promotion. Additionally, Moore was provided three opportunities to pass the physical fitness test (August and October 1997 and April 1998) and was afforded a full hearing before the Board on October 27, 1999. Considering these factors in light of the applicable law, we find the appellate court erred in its appreciation of the facts and in its determination that Moore was denied due process.

EQUAL PROTECTION
The appellate court alternatively found that even if Moore was not denied due process, the WMPD's arbitrary and capricious application of the physical fitness requirement to Moore constituted a violation of the rights provided him under the Equal Protection Clause, U.S. CONST. amend. XIV.
Both the Fourteenth Amendment to the U.S. Constitution and LA. CONST. art. I, § 3 provide that all persons are entitled to equal protection of the law and they shall not be discriminated against because of race. These provisions mandate "that persons similarly situated receive like treatment." Whitnell v. Silverman, 95-0112 (La.12/6/96), 686 So.2d 23, 29-30. But the equal protection provisions of the state and federal constitutions do not require absolute equality or precisely equal advantages. Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); Frederick v. Ieyoub, 99-0616 (La. App. 2 Cir. 5/12/2000), 762 So.2d 144, 148, writ denied, XXXX-XXXX (La.4/12/2001), 789 So.2d 581. To prove a violation of the equal protection clause, the proponent of such argument must show the appointing authority acted with discriminatory intent or purpose. See LA. CONST. ANN. art. X, § 8(B); Chism v. Northwestern State University, 469 So.2d 18 (La.App. 1 Cir.1985); Sanders v. Dept. of Health and Human *950 Resources, 394 So.2d 629 (La.App. 1 Cir.), writ denied, 399 So.2d 602 (La.1981). More particularly as to plaintiff's claims before us, the plaintiff bears the burden of proving that the defendant intentionally discriminated against him or her on the basis of race. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First, a plaintiff must establish a prima facie case of racial discrimination. Hargrove v. New Orleans Police Dept., 01-659 (La.App. 4 Cir. 5/22/02), 822 So.2d 629. Once a prima facie case is established, a presumption is created that the employer has unlawfully discriminated against the employee and the burden shifts to the employer to prove that the "adverse employment actions were taken for a legitimate, nondiscriminatory reason." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Intent in some cases may be inferred from a clear pattern unexplainable on grounds other than some inappropriate classification such as race. McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).
Although we recognize that it is difficult to show a party acted with discriminatory intent, the facts of the present case do not establish that Moore carried his burden of proving a prima facie case of racial discrimination. Contrary to the appellate court's conclusion, the record does not support that the physical fitness requirement was randomly applied to Moore.
Chief Laborde testified that he had no problem with Moore promoting to Sergeant and that he provided him, at the cost of $750 to the WMPD, with special services at the Glenwood Regional Medical Wellness Center to help him pass the physical fitness test. He explained the promotion of minority officers into supervisory positions not only benefitted the department, but also the community.[11] Moreover, even if Moore's obesity was obvious, the record shows that he passed the physical fitness tests on April 13, 1995, and again on April 11, 1996, two years immediately prior to this offer of promotion. Thus, it was not a foregone conclusion that he would not have passed the physical fitness test needed for his promotion to Sergeant.
The record further shows the WMPD studied physical fitness requirements at various times since 1992. To show its commitment to physical fitness, the WMPD had two of its officers schooled on numerous occasions on how to administer the test for physical fitness and to use those tests to improve physical fitness among the members of the WMPD. Moore's physical fitness history shows that even on those times when he failed the test, he was often placed on a workout program to improve his physical condition and he was always given an opportunity to retest. Chief Laborde also testified that the promotional policy involving physical fitness requirements was put into final form two to three weeks before they were posted and distributed on July 11, 1979. Even assuming Chief Laborde learned of Major Avery's misuse of sick leave a week or so before Avery announced his departure from the department, a rational basis existed for the Board to conclude that the development of the promotion policy tied to physical fitness testing began well in advance of that knowledge and was not *951 rushed to implementation just to block Moore's promotion.
It is apparent the enforcement of the physical fitness testing did not only affect Moore's promotion. It was uncontradicted that the two other officers who promoted to the Captain and Major positions after Major Avery's resignation were subjected to this same policy and both passed the physical fitness tests administered to them. In addition, the minutes of the Board further show that the enforcement of this physical fitness policy adversely affected a number of police officers who were denied the opportunity to work extra-duty details because they failed the physical fitness test. At oral argument it was pointed out that it was primarily white police officers who complained about this aspect of the enforcement of the physical fitness requirement. Therefore, it cannot be said that Moore established that the enforcement of the policy was intended to only limit his opportunity for promotion.
Finally, the record establishes that on March 4, 1998, the Board directed Chief Laborde to "re-offer" the Sergeant's position to Moore if he could pass the medical and physical requirements. Even though Moore accepted that offer, he subsequently failed the physical fitness test. We believe this offer and acceptance eliminated any taint of alleged racial bias, which allegation did not occur until October 27, 1999, more than a year after Moore failed the physical fitness test.

CONCLUSION
In summation, we find the Board acted in good faith and statutory cause in its assessment of Moore's appeal of the WMPD's denial of his promotion. Considering the facts developed in this record, Moore has failed to make a prima facie showing of racial discrimination. It has not been shown that the appointing authority acted arbitrarily or capriciously, or as the result of prejudice. To the contrary, this record establishes a rational basis for the action taken and we must reverse.

DECREE
For the foregoing reasons, the judgment of the Court of Appeal, Second Circuit, is reversed and set aside. The decisions of the West Monroe Fire and Police Civil Service Board and the district court are reinstated.
REVERSED.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., dissenting.
I would affirm the decision of the Court of Appeal.
Discrimination is the act, practice or an instance of according treatment categorically, rather than individually. Discrimination means to make a difference in treatment or favor on a categorical basis in disregard of individual merit.
Lawrence Moore was first employed by the West Monroe Police Department in 1988. He passed the written test for promotion to sergeant, and actually filled the position satisfactorily on a provisional basis while Major Bobby Avery was out on sick leave. It is clear from the record that the physical fitness standards which are at issue here had been adopted by the Police Department since January 1, 1992, but these standards had never been used as a prerequisite to promotion.
The record shows that several white officers had come up for promotion after January, 1992 and none had been required to pass the physical fitness examination prior to promotion. The majority makes much of the fact that Larry Laborde, the Chief of Police, implemented his new policy requiring successful completion of all aspects of the physical fitness test on July 11, *952 1997, and that the opportunity for Moore to fill the sergeant's position permanently did not arise until July 22, 1997. Surely, the Chief of Police would know about the controversy surrounding Major Bobby Avery's abuse of sick leave, and that a vacancy was imminent. Chief Laborde's intent was to pass over Moore for promotion.
It is clear in my mind that race, and not weight or physical fitness, was the issue since Moore's weight had not been an impediment over several months when he filled the sergeant's position provisionally. The record establishes that Moore competently fulfilled all of the essential duties of sergeant for six month prior to this fitness regulation being implemented.
NOTES
[1] In the context of medicine, "morbid" is understood as diseased, pathologic or abnormal. STEADMAN'S MEDICAL DICTIONARY 888 (5th ed.1982).
[2] Dr. Smith's notes indicate as follows:

Stress test is technically negative at low level exercise. The patient does have a hypertensive blood pressure response at low level of performance due to physical deconditioning.
[3] The words "class" and "classification plan" have the following meaning in the context of civil service. LA.REV.STAT. ANN. § 33:2473(5) provides: "Class" ... means a definitely recognized kind of employment in the classified service, designated to embrace positions that are so nearly alike in the essential character of their duties, responsibilities, and consequent qualification requirements, that they can fairly and equitably be treated alike under like conditions for all personnel purposes. LA.REV.STAT. ANN. § 33:2473(6) provides: "Classification plan" means all the classes of positions established for the classified service. As applicable in the present case, the class plan at issue is that of Police Sergeant.
[4] "Appointing authority" means any official, officer, board, commission, council, or person having the power to make appointments to positions in the municipal fire and police services. LA.REV.STAT. ANN. § 33:2473(2). It is undisputed in the present case that the city of West Monroe Police Department was Moore's appointing authority.
[5] Moore's opposition to that consolidation was overruled in the district court and that decision was upheld by a writ denial in the Court of Appeal, Second Circuit. Moore v. Ware, 34,751, 34,752 (La.App. 2 Cir. 1/25/01) (unpublished).
[6] LA.REV.STAT. ANN. § 33:2501(A) provides that "[T]he board shall grant the employee a hearing and investigation within thirty days after receipt of the written request" for an appeal to the Board.
[7] Even though Moore did not object to the validity of the physical fitness standards, we note that the Cooper Institute compiled data from thousands of people over two to three decades and used that data to construct physical fitness norms. It was these norms that form the basis for the WMPD physical fitness tests.
[8] It further shows in Moore's physical fitness history that he's participated in physical fitness evaluations and workout programs in 1990, 1991, 1992, 1993, 1995, 1996, and 1997. Moore passed the physical fitness tests on April 13, 1995 and April 11, 1996.
[9] The right to promotion had always been contingent upon demonstrating good health and physical fitness sufficient to perform the essential duties of the position. Moore has not contended that the physical fitness test used by the WMPD is not a valid test.
[10] As part of its commentary on due process, the appellate court also emphasized that it found the WMPD's implementation of the physical fitness test as a prerequisite for promotion was arbitrarily enforced at the time of Moore's opportunity for promotion. We find this contention more appropriate to the equal protection argument and will discuss this issue at that juncture.
[11] Prior to this time, another black officer, Fred Davis, worked for the WMPD until July 1995, a period of 28 and a half years. He became a major in 1994. Major Davis stated he took a medical exam but not a physical fitness test for promotion. The last time he went to take a physical fitness test, he was told it was waived because he was too old, 62 or 63 years of age. He said he took the physical fitness test anyway and passed it.