PARRO, J.
 

 12Burrell Robinson, III appeals a district court judgment that reversed, on judicial review, the decision of the Municipal Fire and Police Civil Service Board for the City of Baton Rouge and reinstated the decision of the Baton Rouge Police Department to terminate him from the police force. After reviewing the facts and applicable law, we affirm the judgment.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 On June 10, 2004, Baton Rouge Police Officer Burrell Robinson, III purchased a house through the United States Department of Housing and Urban Development (HUD) program entitled “Officer or Teacher Next Door Sales Program.” This program required Robinson to own and live in the house as his sole residence for a period of three years. For his participation in this program, the purchase price of the house was discounted 50% from the listed value.
 
 [1]
 
 However, if he did not continuously live in the house for a period of three years or if he falsely certified that he was occupying the home as his sole residence during the three-year owner-occupancy term, he would be in default and could be required to pay HUD the full purchase price. On July 6, 2007, Robinson signed a letter certifying that he had continuously resided in the home as his sole residence for the entire three-year period, as required by the program. The letter had a strong warning on the bottom, which stated that falsifying information was a felony punishable by a fine not to exceed $250,000 and/or a prison sentence of not more than two years.
 

 
 *995
 
 After learning that Robinson had not lived in the house, but had rented the house to two separate tenants on two different occasions during the three-year period, both HUD and the Baton Rouge Police Department conducted | .^investigations into Robinson’s situation. Robinson acknowledged to the Baton Rouge Police Department internal affairs investigator and to the HUD investigator that he had not lived in the house during the three-year period and had rented the house under the HUD Section 8 Housing Program. After its investigation was complete, HUD decided that no criminal charges or civil sanctions would be imposed.
 

 After the internal affairs investigation by the Baton Rouge Police Department, Police Chief Jeff LeDuff, the appointing authority, held a pre-disciplinary hearing on January 30, 2008, for Robinson to present his side of the matter. Following that hearing, in a letter to Robinson dated April 17, 2008, Chief LeDuff stated that Robinson’s conduct in the HUD “Officer or Teacher Next Door Sales Program” demonstrated that he was unfit to continue to serve as a Baton Rouge Police Officer, and he was terminated for “Conduct Unbecoming an Officer.” Robinson appealed his termination to the Municipal Fire and Police Civil Service Board for the City of Baton Rouge (the Board). A hearing was held on September 17, 2008, and the Board voted to set aside and overturn the termination ordered by Chief LeDuff. The Baton Rouge Police Department then filed a petition for judicial review of the Board’s decision in the Nineteenth Judicial District Court, seeking to reverse the Board’s decision and reinstate Robinson’s termination. In a judgment signed June 15, 2009, after finding that Chief LeDuff had acted in good faith and for cause, the district court reversed the Board’s decision, thus reinstating the termination of Robinson’s employment with the Baton Rouge Police Department.
 

 Robinson timely filed this appeal. The issue on appeal is whether the district court applied the appropriate standard of review in reviewing the decision of the Board.
 

 APPLICABLE LAW
 

 The grounds for which the appointing authority may remove or discipline |4a tenured employee are set out in LSA-R.S. 33:2500. The pertinent parts of that statute provide that the following constitute “cause” for termination or other disciplinary action:
 

 A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
 

 * * *
 

 (3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
 

 * * *
 

 (5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.
 

 [[Image here]]
 

 (15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service.
 

 A regular employee in the classified service who feels that he has been discharged without just cause may demand a hearing
 
 *996
 
 and investigation by the Board to determine the reasonableness of the action. LSA-R.S. 33:2501(A). The Board may, if the evidence is conclusive, affirm the action of the appointing authority. LSA-R.S. 33:2501(C)(1);
 
 Landry v. Baton Rouge Police Dept.,
 
 08-2289 (La.App. 1st Cir.5/8/09), 17 So.3d 991, 994-95. If it finds that the action was not taken in good faith for cause, the Board shall order the immediate reinstatement or reemployment of such person. LSA-R.S. 33:2501(0(1). However, absent the Board’s finding of bad faith on the part of the appointing authority, the Board is without authority to modify the appointing authority’s actions. The Board is not vested with the authority to modify or set aside the decision of an appointing authority merely because the Board disagrees with that decision or finds it too harsh. Absent a finding of bad faith without cause, the Board cannot substitute its judgment for that of the | r,appointing authority.
 
 City of Kenner v. Wool,
 
 320 So.2d 245, 247-48 (La.App. 4th Cir.1975).
 

 If the decision of the Board is prejudicial to the appointing authority, the appointing authority may appeal the decision to the court of original and unlimited jurisdiction in civil suits of the parish where the Board is domiciled.
 
 See
 
 LSA-R.S. 33:2501(E)(1). The district court’s review of the Board’s quasi-judicial administrative determination is an exercise of appellate jurisdiction.
 
 Jordan v. City of Baton Rouge,
 
 93-2125 (La.App. 1st Cir.3/10/95), 652 So.2d 701, 703. Review by the district court does not include a trial
 
 de novo. McCoy v. City of Shreveport,
 
 42,662 (La.App. 2nd Cir.12/5/07), 972 So.2d 1178, 1182. The district court’s review is confined to the determination of whether the decision made by the Board was made in good faith for cause under the provisions of LSA-R.S. 33:2471-2508. LSA-R.S. 33:2501(E)(3);
 
 Jordan,
 
 652 So.2d at 704. The district court may not substitute its opinion for that of the Board.
 
 McCoy,
 
 972 So.2d at 1182;
 
 City of Kenner,
 
 320 So.2d at 248. The district court should accord deference to a civil service board’s factual conclusions and must not overturn them unless they are manifestly erroneous. Likewise, the intermediate appellate court’s review of a civil service board’s findings of fact are limited. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error.
 
 Moore v. Ware,
 
 01-3341 (La.2/25/03), 839 So.2d 940, 946.
 

 ANALYSIS
 

 Under LSA-R.S. 33:2501(E)(3), the district court’s review is to be confined to the determination of whether the decision made by the Board was made in good faith for cause. The Baton Rouge Police Department points out that there was no discussion by the Board of the evidence presented to it at the hearing, and the Board made no findings of fact. Additionally, there was no [^suggestion by the Board that Chief LeDuff had acted in bad faith or that he did not have cause for his decision concerning Robinson. Absent such findings, the Baton Rouge Police Department contends, there is no indication that the Board made its decision in good faith and for cause. Rather, it appears that the Board simply substituted its judgment for that of the appointing authority, without the necessary findings. Therefore, the Baton Rouge Police Department urges this court to find that the district court was correct in overturning the Board’s decision.
 

 However, Robinson contends that the evidence presented to the Board reflected that he did not intend to defraud the government and that the United States government was not pursuing any criminal
 
 *997
 
 charges or civil sanctions. Furthermore, the HUD investigation was not a public investigation, nor were the results made public. Therefore, Robinson claims there was no evidence showing that his actions brought disgrace upon himself or the Baton Rouge Police Department, and the ability of any other officer to participate in the HUD program was not impacted. He also points out that, other than this occurrence, he has a clean record.
 

 Several witnesses, including Robinson and Chief LeDuff, testified before the Board. The Board had additional evidence consisting of the sales contract and settlement statement concerning Robinson’s purchase of the house, the subordinate note between HUD and Robinson, two forms requesting listing of Robinson’s house for lease under the Section 8 assisted housing program, the special certification letter signed by Robinson to verify that he had continuously resided in the house, the pre-disciplinary hearing letter sent by Chief LeDuff to Robinson, and the termination letter.
 

 The internal affairs investigator for the Baton Rouge Police Department, Jonathan Dunnam, testified about the information he had received from the HUD investigator concerning Robinson’s purchase of the house, lease of it to 17two Section 8 tenants, and false statement on the certification letter regarding his residing there. He further stated that he interviewed Robinson and learned that, shortly before Robinson purchased the house, his mother became very ill, so he continued living at her house and paying her mortgage note so her house would not be subject to foreclosure. Robinson reportedly also told Dun-nam that he had signed the certification letter on the advice of his real estate agent, who told him he could not own any other property, but he did not have to live in the HUD house. However, when Dun-nam interviewed the realtor, she recalled the conversation, but denied telling Robinson he did not have to live there. Dunnam further testified that Robinson’s internal affairs record had no other complaints.
 

 Robinson acknowledged that he had signed the special certification letter, certifying by his signature that:
 

 I own and, since the agreed upon occupancy start date, have continuously resided in the above subject property as my sole residence and that I do not own any other residential real property in accordance with the Department of Housing and Urban Development’s Officer Next Door/Teacher Next Door Sales Programs.
 

 Immediately below his signature and the date was the statement:
 

 WARNING: Falsifying information on this certification is a felony. It is punishable by a fine not to exceed $250,000 and/or prison sentence of not more than two years. (18 U.S.C. 1010, 8559; 8571)[J
 

 After pointed questions from a member of the Board, Robinson admitted that his certification was false and that he had rented the property to two tenants during the three-year owner-occupancy period. He said he had contacted his realtor concerning the letter and was told to contact HUD, which he did. The HUD social worker told him they would send someone to investigate his situation and, “as long as he was on the up and up,” he had nothing to worry about. At that point, he signed the letter. Similar letters had apparently been sent to Robinson during the two previous years, but since he had the house | ^rented, he never received those letters. Robinson also testified that after his mother died, his siblings told him that they would not use their life insurance proceeds to help pay off the mortgage note on her home, but expected him to take care of it. Therefore, he continued living at his moth
 
 *998
 
 er’s residence and paying the note there. He rented the HUD house to a family in need who was referred to him by a fellow officer. After this family left, he did not know how the second tenant got his name and, after he terminated her lease, he had not rented the house to anyone else. Robinson said he paid the 50% discounted purchase price of the HUD home up front, and then continued paying monthly payments on the note, in addition to paying the monthly payments on his mother’s residence. He said he was still paying the monthly payments to HUD, and had been advised that since the three-year period was over, he could do whatever he wanted with the house. HUD had told him that it was not bringing criminal charges or assessing any civil penalties against him, and had not notified him that he would be responsible for the subordinate note.
 

 Chief LeDuff testified that it was incumbent on the members of the police department to uphold the standards of the department on or off duty, and to live and present themselves as examples to others. He said Robinson’s actions could bring shame or disgrace to the badge. He further stated that other police officers would be getting into the HUD program, and that the police department encouraged their participation, because it wanted police officers to live in troubled neighborhoods, so people would see the police cars in their neighborhoods. Chief LeDuff said that in misusing the HUD program, Robinson had brought tarnish to the badge, even though there was no allegation that he had defrauded the federal government. The key factor for Chief LeDuff was Robinson’s false certification, knowing he was violating the terms of his agreement with HUD and signing it even though it clearly stated that a false certification was a felony. Chief LeDuff said that was the factual basis for his |9decision to terminate Robinson’s employment; it compromised Robinson’s effectiveness as a police officer and tarnished the position, because everything a person signs signifies that what is signed is true and correct. Chief LeDuff said his decision was based on LSA-R.S. 33:2500(A)(3) and on the Department’s Policies and Procedures Manual Disciplinary Code, Section XII, “Disciplinary Articles,” subsection 2:10 (Conduct Unbecoming an Officer), which read as follows:
 

 Every member of the Department, whether on or off duty, in an official or unofficial capacity, must conduct himself at all times in such a manner as to set a good example for all others with whom he may come in contact. He shall in no way, through actions or neglect, bring dishonor or disgrace upon himself or the Baton Rouge Police Department.
 

 Chief LeDuff reiterated that he had not heard anything during the hearing before the Board that would cause him to reconsider terminating Robinson, as opposed to taking some lesser disciplinary action or no action at all.
 

 Lieutenant Eliza Jenkins, Sr. was Robinson’s lieutenant when he was employed with the East Baton Rouge Parish Sheriffs Office. There were no complaints of Robinson’s abilities in his work there. Jenkins expressed surprise that Robinson would make a false statement and said that, as a supervisor, there would be no circumstances where it would be acceptable for one of his men or women to certify to him that a statement was true, knowing that it was false.
 

 Baton Rouge Police Lieutenants Melvin Givens and Caroline Odom also testified. According to Lt. Givens, Robinson had high ratings, because he was proactive, good with the public, took care of his assignments, and inquired how he could become a better officer. Lt. Odom said Robinson treated people fairly and did an excellent job in reporting. Both said that nothing they had heard during the pro
 
 *999
 
 ceedings would cause them concern with Robinson’s character or credibility. However, Givens admitted that if an officer’s credibility were |10compromised, it could dimmish or eliminate his effectiveness as a police officer.
 

 At the close of the testimony, attorneys for both parties gave closing arguments, after which a member of the Board moved to reverse Chief LeDuff s decision in light of all the facts that had been presented at the hearing. The motion was seconded and, without any discussion, passed on a four-to-one vote. The Baton Rouge Police Department appealed the Board’s decision to the district court.
 

 The district court reviewed the record of the hearing before the Board, including listening to the taped testimony and reviewing all documents. The court summarized all of the evidence in oral reasons for judgment, noting that:
 

 The Board made no findings of fact. There was very limited discussion by Board members before the vote.
 

 [[Image here]]
 

 The Board did not address whether or not the Chief [of Police] was in good faith and whether he had cause. But I guess, implicit in their ruling is they felt there was [not] enough cause.
 

 [[Image here]]
 

 The Chief obviously had a problem with Officer Robinson signing this document. ... What bothers me, what apparently bothered Chief LeDuff is, what else is Officer Robinson going to sign because somebody told him to sign it.
 

 * * *
 

 What if Officer Robinson runs into an over zealous Assistant DA who asks him or tells him to sign a search or arrest warrant affidavit that contains information he knows is not true, that the ADA has a good explanation for? Is he still going to sign that?
 

 The Chiefs always going to wonder about that, based upon what Officer Robinson signed here. I have had limited contact with Chief LeDuff, but I have had contact with him both before and after he was appointed Chief of Police. He certainly appears to be, and I do believe he is a man of integrity who has high hopes and high ideals for the Department.
 

 He had evidence before him that Officer Robinson signed an untrue statement. The Chief testified that such evidence in an internal affairs investigative file would be available to various persons in a federal court prosecution on drug charges if the officer was called upon to testify.
 

 The Chief says he’s heard rumors that such information |n could be available in state court drug cases and other cases in which an officer is called upon to testify.
 

 Obviously, the Chief is called upon to stand behind his officers and attest to the veracity of what they have done, and I imagine he would have a hard time doing that with Officer Robinson in the future.
 

 [[Image here]]
 

 Based upon all of that, and the Board’s failure to address those issues, I find that the Chief did act in good faith and for cause. I do not have any evidence that the Board abused its discretion. I am going to reverse the decision of the Board and reinstate the decision of Chief LeDuff.
 

 Our review of the district court’s judgment is limited to the issue of whether the court used the proper standard of review in reversing the Board and reinstating the decision of the appointing authority. We find that the correct standard of review was used. The factual underpinnings of Robinson’s termination are not disputed; he signed a statement indicating that it
 
 *1000
 
 was true, when he knew that it was false and knew that such falsification was a felony. Chief LeDuffs reasoning was clear; he concluded that, in addition to being a felony offense, this action undermined Robinson’s credibility and could prejudice the departmental service. According to LSA-R.S. 33:2500(A)(S), this constituted good cause for removing Robinson from the service and, according to the department’s rules and regulations, was conduct unbecoming an officer.
 

 The district court had no finding from the Board and no evidence that Chief Le-Duff had acted without good faith and/or without cause in terminating Robinson. In the absence of any factual findings or reasons for its decision, it appears the Board merely substituted its judgment for that of the appointing authority. The Board does not have the authority to modify or set aside the decision of the appointing authority merely because the Board disagrees with that decision or finds it too harsh. Absent a finding of bad faith without cause, the Board cannot substitute its judgment for that of the appointing authority. We find that the district court used the correct standard of review and did not |12err in concluding that the Board’s decision was not made for cause and in reinstating Chief LeDuffs decision to terminate Robinson’s employment.
 

 MOTION TO SUPPLEMENT RECORD
 

 The Board filed a motion with this court to supplement the record with a page from the sales contract between Robinson and HUD that was inadvertently omitted when the record was sent by the Board to the district court. The motion was denied by this court on February 11, 2010. The appellate court is a court of record. A request to supplement the appellate record is more properly directed to the trial court.
 
 See
 
 LSA-C.C.P. arts. 2132 and 2088(A)(4). Furthermore, there was testimony before the Board in which the contents of the page in question were discussed and Robinson admitted signing the certification, promising to continuously reside in the house for three years. Therefore, there was no need to supplement the record with this page from the document.
 

 CONCLUSION
 

 Based on the foregoing reasons, we affirm the judgment of the district court. All costs of this appeal are assessed to Burrell Robinson, III.
 

 AFFIRMED.
 

 [1]
 

 . According to the HUD website,
 
 http:Hwww. hud.qov/offices/hsg/sfh/reo/goodn/gnndabot. cfm,
 
 the program is presently referred to as "The Good Neighbor Next Door Program.” HUD requires that the qualified participant sign a second mortgage and note for the discount amount and that no interest or payments are required on this "silent second,” provided the participant fulfills the three-year occupancy requirement.