RHONDA K. OLIVER      *      NO. 2025-CA-0551

VERSUS      *

     COURT OF APPEAL

SEWERAGE & WATER      *

BOARD OF NEW ORLEANS      FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9684
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Tiffany Gautier Chase, Judge Dale N. Atkins, Judge
Rachael D. Johnson)

Rhonda K. Oliver

     PLAINTIFF/APPELLANT

Ashley Ian Smith
Darryl Harrison
SEWERAGE AND WATER BOARD OF NEW ORLEANS
625 St. Joseph Street, Room 201
New Orleans, LA 70165

     COUNSEL FOR DEFENDANT/APPELLEE

         **REVERSED AND REMANDED**
         **MARCH 4, 2026**

*TGC*
*DNA*
*RDJ*

This case involves an appeal from a decision issued by the Civil Service Commission for the City of New Orleans (hereinafter "the Commission"). Appellant, Rhonda K. Oliver (hereinafter "Ms. Oliver"), seeks review of the Commission's decision, which affirmed the termination of her employment by the Sewerage and Water Board of New Orleans (hereinafter "S&WB"). After consideration of the record before this Court and the applicable law, the decision of the Commission to uphold Ms. Oliver's termination is reversed and the case remanded to the S&WB to reinstitute termination proceedings that comply with procedural due process.

## FACTS AND PROCEDURAL HISTORY

Ms. Oliver began working for the City of New Orleans in 2015 in the Department of Housing and Urban Development. In 2021, she was promoted and transferred to the S&WB, obtaining permanent classified employee status in 2022. Ms. Oliver briefly transferred to another City of New Orleans agency but eventually returned to the S&WB, as a classified employee, on January 29, 2024.

In late October 2024, Ms. Oliver began notifying her supervisors that she would not be reporting to work. On October 21, 2024, she emailed her supervisors,

Nicole Kelly (hereinafter "Ms. Kelly"), Utility Customer Service Manager and Susannah Kirby (hereinafter "Ms. Kirby"), Interim Chief Customer Service Officer the following: "Just emailing to inform you that I will be out today for a personal matter." Similar emails were sent on October 22, 23, 25 and 28. On November 4, 2024, Ms. Oliver sent an email stating that she was "still dealing with a personal issue and will be out again this entire week." Ms. Kelly responded to Ms. Oliver's email with the following: "Do you have an expected return date? Or have you reached out to Benefits or [Human Resources] to see if your circumstances qualify for an extended leave[?]" A week later, on November 11, 2024, Ms. Oliver responded that she planned to return to work no later than December 2, 2024. Throughout the duration of her absence and until her eventual termination, Ms. Oliver self-coded her time sheets as Leave Without Pay (hereinafter "LWOP").[1]

On November 11, 2024, the S&WB sent Ms. Oliver, by email and United States Postal Service mail, a letter advising her that a pre-termination hearing would be scheduled for November 21, 2024. The letter explained that Ms. Oliver had been absent for three consecutive weeks, and that "failure to report to work or communicate when/if [she] would be returning to work has been determined to be job abandonment." The letter quoted only to the following provision of the S&WB's Attendance Policy: "If an employee fails to report to work or call in to inform their supervisor of their absence for three (3) consecutive days or more, the employee will be considered to have voluntarily resigned employment." The letter also noted, "you have chosen to code your time sheets as [LWOP]" and "while this was not formally approved, **you have the discretion** to code your time sheets in this manner." (emphasis added). Finally, it stated that if Ms. Oliver was "unable to

---

[1] The time sheets were not introduced into evidence by either party.

appear in person, [she] may submit a written statement of response in lieu of [her] attendance[,]" and her response would be presented at the hearing. Ms. Oliver sent a written response and did not appear at the hearing.[2] However, testimony at a subsequent hearing revealed that the S&WB did not consider her response.

On November 25, 2024, the S&WB notified Ms. Oliver of her termination, effective November 21, 2024. The letter again explained that she was being terminated for job abandonment for failure to report to work or indicate a return date. The letter cited the following violations as the reason for her termination: (1) S&WB's Attendance Policy; (2) Civil Service Rule IX, Section 1.1: Disciplinary Actions, Maintaining the Standards of Service[3], and; (3) Civil Service Rule VIII, Section 5.1: Leave of Absence Without Pay, (a)-(c).[4] The termination letter also

---

[2] Ms. Oliver submitted a written statement, by email, on November 20, 2024. In her response, she stated that she did not abandon her job because she communicated with her supervisor[s] by email regularly.

[3] Civil Service Rule IX, DISCIPLINARY ACTIONS:
   Section 1 MAINTAINING STANDARDS OF SERVICE

1.1 When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:

   (a) termination from the service.

[4] Civil Service Rule VIII, 5.1. states in pertinent part:
   ANNUAL AND OTHER FORMS OF LEAVE
   Section 5 LEAVE OF ABSENCE WITHOUT PAY,
   5.1:

   (a) An appointing authority may grant an employee leave without pay for a period not to exceed one (1) year, whenever such leave is considered to be in the best interests of the service. Leave without pay for an additional period of time may be granted only with the approval of the Civil Service Commission.
   (b) Appropriate personnel forms must be submitted by the appointing authority during the initial days of the period for which leave without pay was authorized in accordance with the provisions of this Section of these

pointed out that Ms. Oliver's LWOP was never formally approved and noted that "you **do not** have the discretion to code your time sheets in this matter." (emphasis in original). For the first time, the termination letter provided a more expansive version of the S&WB's Attendance Policy, which stated:

> An employee who fails to report to work as scheduled for three (3) consecutive working days without notice **or without approval** may be considered to have voluntarily resigned from his or her position due to job abandonment. Since job abandonment is not a disciplinary action and therefore not subject to a Pre-Termination Hearing. (emphasis added)

Finally, the termination letter specifically highlighted that Ms. Oliver "failed to attend the scheduled [pre-termination] hearing."

Ms. Oliver timely appealed her termination to the Commission. At the hearing, she argued that she did not violate the S&WB's Attendance Policy because she regularly notified her supervisors that she would not report to work due to personal reasons. Ms. Oliver also explained that she coded her time sheets as LWOP because "that's what S&WB does all the time.[]"[5]

Testimony and evidence were taken by a Hearing Officer at the Civil Service hearing from Ms. Oliver, Ms. Kelly and Sharita Curtis (hereinafter "Ms. Curtis"). Ms. Kelly testified that she signed the time sheets that were unilaterally coded by

---

Rules. Personnel forms need not be submitted for periods of leave without pay which constitute less than a total workday.

(c) At the discretion of the Appointing Authority, any employee who is absent from work without prior authorization may be carried on leave without pay for that time period on all payroll records. Such action shall not be termed as disciplinary and hence shall not warrant an appeal to the Commission.

[5] Ms. Oliver issued subpoenas to eleven witnesses, two of whom she intended to elicit testimony regarding the LWOP practices of the S&WB. The S&WB filed motions to quash which were granted; therefore, the witnesses did not testify.

Ms. Oliver as LWOP. She stated that she also conferred with the payroll department to determine if Ms. Oliver's self-coding was acceptable.

Ms. Curtis, Employee Relations Specialist, testified that pursuant to Civil Service policy, the only time an employee can use LWOP is if it was approved by the S&WB at the time the request is made, or for disciplinary reasons. Ms. Curtis explained that Ms. Oliver violated the S&WB's Attendance Policy when she unilaterally placed herself on LWOP. She further testified that she had never seen the November 11, 2024 email from Ms. Oliver that mentioned a return to work date of December 2, 2024. Ms. Curtis also testified to the implications of Ms. Oliver's failure to appear at her pre-termination hearing. She stated, "if there is a pre-termination hearing scheduled and the employee does not show up, then we just proceed with the actual termination." She emphasized that Ms. Oliver's emailed response (submitted in lieu of her attendance) was available to those conducting the pre-termination hearing, but that it was "rejected" and not considered.

After hearing testimony and examining the evidence, the Hearing Officer provided a written report. The report concluded that Ms. Oliver did not formally request LWOP and that the S&WB had no obligation to grant leave, even if Ms. Oliver provided notice that she would be out. The Hearing Officer found that the S&WB established, by a preponderance of evidence, just cause in its decision to terminate Ms. Oliver.

The Commission reviewed the hearing transcript, exhibits, and the Hearing Officer's Report and determined that Ms. Oliver's three-week unapproved absence, without a return date, constituted job abandonment. In its report, the Commission concluded that Ms. Oliver abandoned her job by failing to report to work from

5

October 21, 2024 to November 8, 2024. The report acknowledged that Ms. Oliver advised her supervisors of her impending absences but disregarded that fact as irrelevant since she never sought approval from the S&WB. Citing to Civil Service Rule VIII, Section 5.1(a)-(c), the Commission concluded that since the S&WB never authorized Ms. Oliver's LWOP, she was in violation of the S&WB's Attendance Policy. Finally, the Commission concluded that Ms. Oliver's absence affected the operation of the S&WB and affirmed Ms. Oliver's termination. This appeal followed.

## STANDARD OF REVIEW

"[T]he standard of review in a case from the Civil Service Commission is established by the constitutional rule that the Commission's decision is subject to review on any question of law or fact." *Dukes v. New Orleans Police Dep't*, 2022-0746, p. 5 (La.App. 4 Cir. 5/10/23), 368 So.3d 159, 163 (citing La. Const. art. X, § 12). "A multifaceted standard of appellate review applies." *Id*. The Commission's factual findings are not disturbed upon review unless clearly wrong or manifestly erroneous. *Id*. (citation omitted). When "evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission's decision unless it is arbitrary, capricious, or characterized by an abuse of discretion." *Id*. (internal quotations omitted) (citation omitted).

## DISCUSSION

On appeal, Ms. Oliver challenges her termination arguing that the Commission erred in determining that the S&WB satisfied its burden that she violated the S&WB's Attendance Policy. While Ms. Oliver challenges the substantive ruling, our review of the record does not permit us to reach the merits.

During our multifaceted review, this Court identified a procedural defect which preempts our consideration of the merits. Namely, whether Ms. Oliver was afforded procedural due process.

In *Cleveland Bd. of Educ. v. Loudermill*, our United States Supreme Court held that civil service employment is recognized as a property right, and therefore protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 470 U.S. 532, 533, 105 S.Ct. 1487, 1489, 84 L.Ed.2d 494 (1985); *see also Matusoff v. Dep't of Fire*, 2019-0932, p. 6 (La.App. 4 Cir. 5/20/20), 364 So.3d 240, 244 (citation omitted). Due process rights are further enumerated in the Louisiana State Constitution, stating that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." La. Const. art. I, § 2. "The due process clause provides that the right to life, liberty, and property cannot be deprived except pursuant to constitutionally adequate procedures." *Moore v. Ware*, 2001-3341, p. 11 (La. 2/25/03), 839 So.2d 940, 948 (citations omitted). In a public employment context, a due process claim depends upon having a property right in continued comparable employment. *Id*. at p. 12, 839 So.2d 948. As a classified Civil Service employee, Ms. Oliver has a vested property right which is therefore protected by constitutional procedural due process.[6]

---

[6] "An employee with permanent status in the classified city service may only be terminated, or otherwise subjected to disciplinary action, in writing and for good cause." *Stephens v. New Orleans Police Dep't*, 2019-0641, p. 6 (La.App. 4 Cir. 12/4/19), 286 So.3d 519, 523 (citation omitted). "Legal cause exists whenever an employee's conduct impairs the efficiency of the public service in which the employee is engaged." *Cittadino v. Dep't of Police*, 558 So.2d 1311, 1315 (La.App. 4th Cir. 1990) (citation omitted). "The burden of proof on appeal [to a commission], as to the facts, shall be on the appointing authority." La. Const. Ann. art. X, § 8. "[T]he appointing authority must prove, by a preponderance of the evidence, the occurrence of the complained of activity and that the conduct did in fact impair the efficient and orderly operation of the public service." *Dukes*, 2022-0746, p. 6, 368 So.3d at 164 (citations omitted). "[T]he Commission has a duty to review whether good or lawful cause exists for taking. . .

Prior to discharge, a public employee is entitled to notice of the charges against them, an explanation of the employer's evidence and an opportunity to present reasons why the proposed action should not be taken. *Loudermill*, 470 U.S. at 545-546, 105 S.Ct. at 1495, 84 L.Ed. 2d 494. The essential requirements of due process for a public employee are notice and an opportunity to respond. *Id.* "The purpose behind this notice requirement is to apprise the employee in detail of the charges and to limit any subsequent proceedings to the stated reasons." *Fox v. Dep't of Sanitation*, 485 So.2d 651, 652 (La.App. 4th Cir. 1986), (citation omitted). Thus, we must determine whether the S&WB's notice was sufficient.

Our inquiry begins with the initial notice of violations issued to Ms. Oliver, as set forth in the November 11, 2024 pre-disciplinary letter (hereinafter referred to as the "November 11th letter"). We focus on four (4) specific provisions of the letter. First, the November 11th letter stated that a hearing was scheduled for November 21, 2024 at 10:00 a.m. to allow Ms. Oliver to respond to the "proposed termination for violating the following policies: [S&WB's] Attendance Policy and [Civil Service Commission] Rule IX, Section 1- Disciplinary Actions, Maintaining the Standards of Service." Second, the November 11th letter referred to Ms. Oliver's coding of her time sheets in the following manner, "[y]ou have chosen to code your time sheet as Leave Without Pay (LWOP). The Payroll Department informed that, while this was not formally approved, you have the discretion to code your time sheet in this manner." Third, the November 11th letter provided the following explanation of the S&WB's leave policy: "if an employee fails to report to work or call in to inform their supervisor of their absence for three (3)

disciplinary action against an employee." *Stephens,* 2019-0641, p. 6, 286 So.3d at 523 (citation omitted).

8

consecutive days or more, the employee will be considered to have voluntarily resigned employment." Finally, the November 11th letter gave Ms. Oliver the option of appearing at the hearing or to submit a response.  Specifically, the letter stated, "[i]f you are unable to appear in person, you may submit a written statement of response in lieu of your attendance.  If submitted, this statement will be presented in the hearing. Written statements should be submitted…at least one (1) day prior to the hearing date." On November 20, 2024, Ms. Oliver submitted, by email, a written statement. In her response, she stated that she did not abandon her job because she communicated with her supervisor[s] via email regularly.

On November 25, 2025, the S&WB sent Ms. Oliver a letter notifying her that a determination had been made to terminate her employment. The letter stated that the "separation is in accordance with the [S&WB] Policy and [Civil Service Commission] Rules." The termination letter cited, for the first time, Civil Service Rule VIII, Section 5- Leave of Absence Without Pay. The S&WB explained that Ms. Oliver continued to be absent for three (3) consecutive weeks without approval. Second, it stated that Ms. Oliver chose to code her "[t]ime sheet as Leave Without Pay (LWOP). The Payroll Department informed you that, while this was not formally approved, you **do not** have the discretion to code your time sheet in this manner." (emphasis in the original). Third, the letter noted that Ms. Oliver failed to appear at the hearing. No reference was made to Ms. Oliver's November 20, 2024 written response.

In *Matusoff*, this Court, noted that "[the] right to notice and opportunity to be heard must be extended at a meaningful time and [in] a meaningful manner." 2019-0932, pp. 6-7, 364 So.3d at, 244-45 (citing *Moore*, 2001-3341, p. 11, 839 So.2d at 949). A "tenured public employee is entitled to oral or written notice of the charges

against him. An explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill.*, 470 U.S. at 546, 105 S.Ct. at 1495, 84 L.Ed.2d 494 (citation omitted).

The basis of Ms. Oliver's termination was her failure to report to work for three (3) consecutive weeks and that she did not seek approval from the S&WB to designate her absences as LWOP. We find this conclusion to be inconsistent with the notice first given to Ms. Oliver. The November 11th letter did not reference the LWOP approval requirement. Rather, the November 11th letter only stated the following: "if an employee fails to report to work or call in to inform their supervisor of their absence for three (3) consecutive days or more, the employee will be considered to have voluntarily resigned employment." The only reference to LWOP were two (2) sentences that stated, "For the past three consecutive weeks, you have chosen to code your time sheet as Leave Without Pay (LWOP). The Payroll Department informed that, while this was not formally approved, you have the discretion to code your time sheet in this manner." In response to the November 11th letter, Ms. Oliver consistently referenced the emails sent to her supervisors. In fact, Ms. Oliver's testimony before the Hearing Officer was that she "followed procedures" by emailing her supervisors throughout the three (3) week time period. The November 11th letter, the initial notice of the violations, neither referenced the need for approval from the S&WB nor did it suggest that Ms. Oliver was prohibited from coding her time sheet as LWOP. Rather, the letter stated that it was in her discretion to code her time sheet as LWOP. Finally, the termination letter highlights Ms. Oliver's failure to attend the hearing and states that "[Y]our failure to report to work or communicate when/if you would be returning to work has been determined to be job abandonment." Both statements are inconsistent

10

with the November 11th letter on both points. Ms. Oliver was given the option not to appear at the hearing and was allowed to submit a statement in lieu of appearance, which she did. Ms. Oliver submitted an email on November 11, 2024 indicating that she intended to return on December 2, 2024. The November 11th letter and termination letter were signed by two different people and reflect numerous inconsistencies. Teira R. Woodridge, Employee Relations Specialist, S&WB Human Resources Department signed the November 11th letter while Ghassan Korban, Executive Director of the S&WB, signed the termination letter. These inconsistencies and discrepancies reinforce our conclusion that the procedures were fundamentally flawed from its inception. The purpose of the notice requirement is to apprise the employee, in detail, of the charges and to limit any subsequent proceedings to the stated reasons. Ms. Oliver was not properly apprised of the charges levied against her and the subsequent proceedings exceeded the charges stated. Therefore, considering the law, we find Ms. Oliver was denied procedural due process.

## CONCLUSION

We note that our finding today pretermits any substantive discussion as to whether Ms. Oliver violated the S&WB's Attendance Policy and corresponding Civil Service Rules regarding LWOP or the necessity of approval. Instead, we focus on the procedural due process violation. The essential guarantee of the Due Process Clause is to ensure a person is afforded a fundamentally fair proceeding prior to depriving that person of their life, liberty, or property. The threshold requirement to a fair proceeding begins with the initial notice of the violations. As a civil service employee, Ms. Oliver has a vested property right that may not be infringed upon without due process of the law. Ms. Oliver was not afforded proper

11

procedural due process by the S&WB because the ultimate basis for her termination exceeded the violations set forth in the initial pre-termination notice. This initial procedural defect tainted the findings of the Hearing Officer as well as the Commission. Accordingly, we remand this case to the S&WB for it to reinstitute the termination proceedings against Ms. Oliver consistent with this opinion.

## DECREE

Based on the foregoing, the decision of the Civil Service Commission is reversed and the case is remanded to the Sewerage and Water Board to reinstitute termination proceedings that comply with procedural due process.

**REVERSED AND REMANDED**