# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-328

NOLVEY STELLY

VERSUS

## LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2015-4611
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and D. Kent Savoie, Judges.

**AFFIRMED.**

Chester Theodore Alpaugh, III
Guste, Barnett, Schlesinger, Henderson & Alpaugh, L.L.P.
639 Loyola Avenue – Suite 2500
New Orleans, LA 70113
Telephone:  (504) 529-4141
COUNSEL FOR:
    Plaintiff/Appellant - Nolvey Stelly

Marie Candice Hattan
110 E. Kaliste Saloom – Suite 101
Lafayette, LA 70508
Telephone:  (337) 234-0431
COUNSEL FOR:
    Defendant/Appellee - Lafayette Municipal Fire & Police Civil Service
    Board

**Michael Patrick Corry, Sr.**
**Hallie P. Coreil**
**Briney Foret Corry**
**P. O. Box 51367**
**Lafayette, LA 70505-1367**
**Telephone: (337) 237-4070**
**COUNSEL FOR:**
     **Defendnat/Appellee - Lafayette City-Parish Consolidated Government**

**THIBODEAUX, Chief Judge.**

Lieutenant Nolvey Stelly (Officer Stelly) of the Lafayette Police Department (LPD) appeals from the trial court's judgment sustaining a fifteen-day suspension from duty by the Lafayette Municipal Fire & Police Civil Service Board (the Board). Finding no manifest error in the trial court's factual findings, we affirm the judgment.

## I.

### ISSUES

We must decide:

(1) whether the trial court manifestly erred in finding that Officer Stelly violated LPD procedures;

(2) whether the trial court manifestly erred in finding that the conclusions and penalties imposed by the Board were reasonable and just; and

(3) whether Officer Stelly was afforded constitutional due process.

## II.

### FACTS AND PROCEDURAL HISTORY

Officer Stelly had been on extended sick leave with pay for a year due to job-related stress. He was preparing to return to duty. On August 16, 2013, Lt. Dwayne Prejean called Officer Stelly to inform him that he was going to be placed on administrative leave with pay and that he must undergo a psychological fitness-for-duty evaluation (FFDE) and complete mandatory training that he had missed during his absence. Officer Stelly initially asked for a police unit to drive to the appointment, but he was told to drive his personal vehicle. He was later informed

that he would be transported to Matrix, Inc. in Baton Rouge for the fitness evaluation in an unmarked car by Internal Affairs investigators in plain clothes.

At 8:00 a.m. on August 19, Officer Stelly met with Internal Affairs at LPD and was served with the conditional administrative leave notice issued by Chief of Police Jim Craft. Regarding the fitness evaluation in Baton Rouge, the letter specified as follows:

> Your scheduled appointment date and time is Tuesday, August 20, 2013 at 8:00 a.m. Transportation will be provided; you are directed to report to the Police Department lobby at 6:30 a.m. on Tuesday, August 20, 2013 for transport to MATRIX, Inc. Any changes in appointment time must be reported to and cleared with Lieutenant Dwayne Prejean in Internal Affairs unit.

The administrative leave letter also outlined the consequences for violation of any of the criteria listed in the directive, specifically stating that such violation would be considered a major offense under Lafayette Consolidated Government Policies and Procedures, PPM 2161-2–Conditions of Employment. The letter then quoted the regulation's pertinent definitions and consequences:

> 3.2 Major Offenses are those willful or deliberate violations that exceed those considered correctable by progressive, corrective disciplinary action and which may result in immediate discharge without consideration of employment history or past performance. Major offenses include the following:
>
> d. Gross insubordination, consisting of a repeated refusal or failure to comply with a lawful directive given by a supervisor or superior after having been warned of the potential consequences of such actions (Section 1.18, 2.4 and 2.9 of this PPM).

Officer Stelly was provided a copy of PPM 2161-2, and two General Orders known as GO 201.2, governing professionalism, and GO 204.6, governing the FFDE process. At the time Officer Stelly was issued the conditional

2

administrative leave notice on August 19, the FFDE process was read and explained to him. Officer Stelly made several inquiries about the process, but never stated that he would not report as ordered by Chief Craft.

Later in the afternoon, at 3:40 p.m. on August 19, Officer Stelly's attorney, Stephen Spring, sent an e-mail to the city attorney stating that his client would not be available for transport to Baton Rouge the following morning. Mr. Spring explained that Officer Stelly and he had business at his office in Baton Rouge that same evening and that Officer Stelly could walk to the evaluation from the firm's office the following morning. He further stated that they were curious about the evaluation because Officer Stelly had already been cleared by his physician and the city nurse, but that Officer Stelly would appear on time for his evaluation appointment. At 4:34 p.m., City Attorney Michael Corry e-mailed Mr. Spring as follows:

> Gentlemen,
>
> Below is Chief Craft's direct order to Officer Stelly:
>
> Lt. Stelly was previously notified by letter and phone that this FFDE was required before he returns to duty. He was not cleared by the City Nurse; she merely received his doctor's excuse releasing him and ordered a drug screen. Lt. Stelly was notified by letter this morning that he will be transported by IA investigators to Matrix. He mentioned nothing about an appointment with his lawyers. IA plans on leaving here at 6:30 AM with him. If he wants to visit his lawyers after his testing; he can make arrangements for transport back to Lafayette on the following date.
>
> We assume Lt. Stelly will follow the direct orders given to him by Chief Craft.

On August 20 at 6:30 a.m., two Internal Affairs detectives arrived at LPD to transport Officer Stelly to Matrix, Inc. in Baton Rouge. The detectives

checked the front lobby and the parking lot for Officer Stelly to no avail. Officer Stelly failed to report to LPD to be transported to Matrix, Inc. as directed, and he made no contact with the Internal Affairs Unit or Chief Craft to advise that he would not be reporting as ordered.

On August 26, 2013, a complaint was filed by the Internal Affairs Unit alleging that Officer Stelly failed to comply with a directive issued by Chief Craft. On the same date, Chief Craft ordered an investigation into the allegation, and Officer Stelly was served with the LPD Notice of Investigation. His interview with Internal Affairs was scheduled for September 26, and he was served with notice on September 13 that he was continued on administrative leave with pay during the investigation. Officer Stelly's attorney was present for his interview on September 26, and he was advised of his Police Officer's Bill of Rights. During the interview, Officer Stelly admitted that he was ordered to appear for transport to Matrix, Inc. He further admitted that he contacted only his attorney, and that he did not obtain approval from Chief Craft or the Internal Affairs Unit for any changes to the directive. Officer Stelly admitted that he was directed to follow the directive, that he was aware of the consequences, and that he was provided a copy of PPM 2161-2.

Officer Stelly's failure to comply with a lawful directive issued by Chief Craft was ultimately found to be a direct violation of PPM 2161-2– Conditions of Employment (Gross Insubordination) and LPD GO 201.2– Professional Conduct and Responsibilities (Responsibilities sections (d)(1) and

4

(2)).  He was suspended from duty for fifteen days in November.[1]  Officer Stelly

appealed the suspension to the Board.

Following a hearing in September 2015, the Board issued a decision

upholding the suspension.  Officer Stelly then appealed the Board's decision to the

district trial court in Lafayette.  The court affirmed the Board's decision.  Officer

Stelly now appeals the judgment of the trial court.

III.

## STANDARDS OF REVIEW

An employee under classified service may appeal
from any decision of the civil service board that is
prejudicial to him.  [La.R.S.] 33:2501(E)(1).  Such an
appeal shall be taken to the district court wherein the
civil service board is domiciled.  Id.  This hearing "shall
be confined to the determination of whether the decision
made by the board was made in good faith for cause" and
"[n]o appeal shall be taken except upon these grounds."
[La.R.S.] 33:2501(E)(3).

If made in good faith and statutory cause, a
decision of the civil service board cannot be disturbed on
judicial review.  Good faith does not occur if the
appointing authority acted arbitrarily or capriciously, or
as the result of prejudice or political expediency.
Arbitrary or capricious means the lack of a rational basis
for the action taken.  The district court should accord
deference to a civil service board's factual conclusions
and must not overturn them unless they are manifestly
erroneous.  Likewise, the intermediate appellate court
and our review of a civil service board's findings of fact
are limited.  Those findings are entitled to the same
weight as findings of fact made by a trial court and are
not to be overturned in the absence of manifest error.

*Moore  v.  Ware*, 01-3341, pp. 7-8 (La. 2/25/03), 839 So.2d 940, 945-46 (citations

omitted).

---

[1]Officer Stelly was subsequently terminated from his employment with LPD, and his termination was appealed separately before the district court.  The current appeal before us addresses the fifteen-day suspension only.

IV.

## LAW AND DISCUSSION

*Factual Findings Regarding Violations*

Officer Stelly contends that the trial court erred in finding that the Board's decision was reasonable. He asserts that he did not violate the LPD's operating procedures, and his conduct did not warrant suspension. The documented facts in the record demonstrate otherwise. Officer Stelly was preparing to return to duty after a year-long sick leave due to job-related stress. While on extended sick-leave with pay, he received a letter of warning in January 2013 enumerating various specific incidents of disruptive behavior at LPD by Officer Stelly during the period that he was to be recuperating at home. The file indicates that there were three separate investigations of violations pertaining to Officer Stelly. Officer Stelly received a letter from Chief Craft on July 30, 2013, informing him that his return-to-duty requirements included medical releases, drug screening, and a psychological fit-for duty evaluation.[2] Additionally, he would have to update all mandatory training that he missed in his absence.

---

[2]The Chief's letter highlighted the reasons for the psychological FFDE, found at GO 204.6, and the letter listed in particular paragraph (h) of the regulation:

PROCEDURE

A. OBSERVATION MANDATE: Because the public is required to comply with commands by law enforcement personnel and submit to the authority of a law enforcement officer; and because some Department positions and assignments such as administrative duties are handled by civilian (non-commissioned police personnel) employees, a policy mandate exists that such law officers and employees not engage in behaviors that are potentially harmful to self or others, or exhibit behaviors that may reasonably be believed to impair operational efficiency and the capability of performing assigned duties.

. . . .

2. Any employee (sworn or civilian) shall be subject to and comply with an order for psychological FFDE when observed or credibly reported behavior, in the sole opinion of the Chief or his designee raises reasonable

6

The letter that he was given on August 19 informing him of the conditional administrative leave *again* outlined the conditions that he must fulfill before returning to duty. This time the letter gave him the specific FFDE appointment time for the following morning and informed him that he would be transported from Lafayette at 6:30 a.m. to Baton Rouge for the 8:00 a.m. appointment. The letter specifically informed him that any changes in the procedure would have to be approved by Lieutenant Prejean of Internal Affairs, and the letter specified exactly what the consequences were if the procedure was violated. After Officer Stelly failed to appear at LPD for his 6:30 a.m. transport to Baton Rouge on August 20, he admitted during his September interview with Internal Affairs that he was aware of the consequences of disobeying an order, and that he had received a copy of PPM 2161-2. In addition to admitting these failures, Officer Stelly has offered no evidence to refute the factual findings of the Board or the trial court. PPM 2161-2–Conditions of Employment, states in part as follows:

> Requirements
>
> 1.6 To be at your assigned work place and ready for work at the designated starting time.
>
> 1.18 To follow instructions of your supervisor and perform tasks as directed. If you consider an order improper or unjust, perform the task and request permission to bring the matter to your supervisor's superior, unless the task would clearly jeopardize your health and safety, [or] violate policy. In such case, talk it over with your supervisor immediately. If the task is

---

questions regarding said employee's ability to function as a police officer or a civilian employee of the Department, including, but not limited to, the following: (CALEA - 52.2.7)

. . . .

h. When the officer/employee proceeds with an employment related lawsuit against his/her employer in which he/she alleges significant mental, emotional, or behavioral injury of any type.

clearly unsafe or overly dangerous, you have the right to demand that your supervisor contact the Safety Officer for an onsite consultation. Failure to obey instructions is a serious offense; therefore, you may be asked to state your reasons in writing.

Prohibitions

2.9 Insubordination resulting from refusing or failing to comply with a lawful directive given by a supervisor or superior. Depending upon the facts and circumstances of the insubordination, the actions of the employee may be deemed to be so extreme, outrageous, and unacceptable so as to constitute "gross insubordination" and a major offense as defined under Section 3.2 of this PPM.

Classification of Offenses

3.2 Major Offenses are those willful or deliberate violations that exceed those considered correctable by progressive, corrective disciplinary action and which may result in immediate discharge without consideration of employment history or past performance. Major offenses include the following:

d. Gross insubordination, consisting of a repeated refusal or failure to comply with a lawful directive given by a supervisor or superior after having been warned of the potential consequences of such actions (Section 1.18, 2.4 and 2.9 of this PPM).

Officer Stelly not only received a copy of PPM 2161-2, but the pertinent terms were specifically defined in the letter he received on August 19. Additionally, the response to Officer Stelly's attorney was clear that the directive would stand and that Officer Stelly would be expected to appear for transport. Yet, he did not appear. The record supports the Board's conclusions that Officer Stelly violated PPM 2161-2, and the trial court's affirmance of the Board's conclusions.

Likewise, Officer Stelly also violated GO 201.2–Professional Conduct and Responsibilities, which provides in pertinent part:

Responsibilities

d. Employees shall promptly obey all lawful orders issued by supervisors, in addition to promptly follow[ing] the directions of radio dispatchers.

1. The failure or deliberate refusal of employees to obey such orders shall be deemed as insubordination and is prohibited.

2. Flaunting with the authority of a supervisor by displaying obvious disrespect or by disputing his/her orders shall likewise be deemed as insubordination and subject to progressive disciplinary action.

Pursuant to General Orders of the LPD, GO 201.2, under the heading of Professional Conduct, Item L 3 states:

Upon receipt of a perceived unjust or improper order, the receiving employee shall obey the order to the best of his/her ability within the limits of law, and then report the order through proper chain of command. No employee shall obey an order that is contrary to Federal, State, or Local Ordinance.

Here, there was no showing made before the Board that Chief Craft's order was contrary to any federal, state, or local ordinance. While Officer Stelly did not personally agree with the order, he was required by the General Orders to comply and then report the incident through the proper chain of command. Officer Stelly did not follow the mandates of the General Orders, and he ignored Chief Craft's order. PPM 2161-2, under the heading, "Requirements," Item 1.18, requires officers "[t]o follow instructions of your supervisor and perform tasks as directed." The conclusions of the Board and the trial court as to the violations are clearly supported by the record and were made in good faith and for cause.

*Commensurate Discipline*

Officer Stelly contends that the General Order regarding the FFDE under GO 204.6 does not require that the officer be transported; therefore, his refusal to be transported was not a violation, and the fifteen-day suspension was not warranted. This argument completely ignores PPM 2161-2 and GO 201.2 that Officer Stelly did violate by disobeying orders. Moreover, GO 204.5 indicates that the suspension was warranted, as failure to carry out orders and insubordination are Category 3 Offenses. Specifically, GO 204.5 provides various levels of informal and formal action including counseling, retraining, warning, caution, reprimand, suspension, demotion, and dismissal:

> TYPES OF FORMAL AND INFORMAL ACTION
>
> . . . .
>
> C. Demotion, Suspension, Reduction of Pay
>
> 1. If the situation warrants, the Chief of Police or Appointing Authority may demote, suspend with/without pay, or reduce an employee's pay for a specific length of time.
>
> 2. Suspensions without pay will normally be for a specific-period of time, as determined by the Chief of Police or Appointing Authority.
>
> . . . .
>
> CODE OF DISCIPLINE–CATEGORIES OF OFFENSES
>
> A. Disciplinary actions shall be subdivided into three distinct classes or groups, each resulting in progressive punitive actions. The classes of disciplinary offenses are identified as follows: Category 1 Offenses, Category 2 Offenses, and Category 3 Offenses. The code is structured similar to the Louisiana Criminal Code, with offenses grouped in categories based on the relative seriousness of the offense. The potential penalty is then set according to the level of seriousness and escalates

with subsequent offenses.  The most serious offenses will be dealt with severely, and at the discretion of the Chief of Police.

. . . .

3.0 CATEGORY 3 OFFENSES

. . . .

3:17 Carrying Out Orders

Employees of the Department are required to obey any Standing Order or General Order, abide by all policies and procedures and promptly carry out any order relayed from a supervisor by an employee of the same or lesser rank, whether issued verbally, in writing, or by telecommunications (2-way radio, phone, fax, digital communications).  Employees shall obey lawful order(s) of a superior.  Upon receipt of a conflicting order, the employee receiving the order shall tell the supervisor issuing the second order of this fact.  If then directed, the employee-shall obey the second order.  Upon receipt of a perceived unjust or improper order, the receiving employee shall obey the order to the best of his ability within the limits of the law, and then report the order through the proper chain of command.  No employee shall obey an order that is contrary to Federal, State, or City Law.

3:18 Insubordination

Employees shall promptly obey all lawful orders and directions given by supervisors.  The failure or deliberate refusal of employees to obey such orders shall be deemed insubordination and is prohibited.  Flaunting with the authority of a superior officer by displaying obvious disrespect or by disputing his orders shall likewise be deemed insubordination.

As concisely stated by the trial court:

Failure to follow a direct order is a major offense. The Appellant was a senior lieutenant.  In his position he supervised others and was required to set an example. Failure to follow a direct order is a serious infraction which may carry a sanction as severe as termination.  In this case, the [C]hief and the Board found the actions of the Appellant constituted insubordination deserving of a

11

sanction of [a] fifteen day suspension. Legal cause for disciplinary action exists if the facts found by the commission disclose that the conduct of the employee impairs the efficiency of the public service. The police department operates on a hierarchy of command and adherence to that command. The Chief and the Board concluded that Appellant's insubordination impaired the efficiency of the department. There is a real and substantial relationship between an act of insubordination and efficient operation of the police department. Accordingly, the discipline was imposed for legal (just) cause.

Based upon the unrefuted evidence in the record, we find no manifest error in sustaining the fifteen-day suspension as commensurate with the offenses.

### *Due Process and Loudermill*

Officer Stelly contends that he did not receive notice of the charges, an explanation of the evidence, and opportunity to present his side of the story pursuant to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487 (1985). The record reveals that Officer Stelly was provided with a Notice of Investigation by Internal Affairs on August 26, 2013, only six days after Officer Stelly failed to show up at LPD for transport to the FFDE. While the notice did not explain the evidence, it specifically stated the reason for the investigation:

You have become the subject of an Internal Affairs Investigation alleging:

• Failure to comply with a Lawful Directive

The Notice of Investigation advised Officer Stelly of his Bill of Rights and his right to have his attorney present for the interview on September 26, and it directed him to the statutes and General Orders that would help him understand the investigative process. During the September 26 interview with Internal Affairs, Officer Stelly's attorney was present and asked questions and entered evidence.

12

Officer Stelly testified throughout. The transcript of that interview makes it clear that Officer Stelly knew what the charges were and had ample opportunity to tell his side of the story. Additionally, Officer Stelly subsequently had an opportunity to provide additional information at a pre-disciplinary hearing with Chief Craft in October. He had nothing to add. We find that, contrary to his assertion, Officer Stelly was fully accorded due process.

> An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."[7] *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original); see *Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth*, 408 U.S., at 569-570, 92 S.Ct., at 2705; *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972).

*Loudermill*, 470 U.S. at 542.

The U.S. Supreme Court in *Loudermill* explained the need for some form of pretermination hearing in order to balance the competing "private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Id.* at 542-43 (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893 (1976)). The Court went on to articulate:

> [T]he pretermination "hearing," though necessary, need not be elaborate. We have pointed out that "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests

> involved and the nature of the subsequent proceedings."
> *Boddie v. Connecticut*, 401 U.S., at 378, 91 S.Ct., at 786.
> See *Cafeteria Workers v. McElroy*, 367 U.S. 886, 894-
> 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). In
> general, "something less" than a full evidentiary hearing
> is sufficient prior to adverse administrative action.
> *Mathews v. Eldridge*, 424 U.S., at 343, 96 S.Ct., at 907.
> Under state law, respondents were later entitled to a full
> administrative hearing and judicial review. The only
> question is what steps were required before the
> termination took effect.
>
> . . . .
>
> The essential requirements of due process . . . are
> notice and an opportunity to respond. The opportunity to
> present reasons, either in person or in writing, why
> proposed action should not be taken is a fundamental due
> process requirement. See Friendly, "Some Kind of
> Hearing," 123 U.Pa.L.Rev. 1267, 1281 (1975). The
> tenured public employee is entitled to oral or written
> notice of the charges against him, an explanation of the
> employer's evidence, and an opportunity to present his
> side of the story. See *Arnett v. Kennedy*, 416 U.S., at
> 170-171, 94 S.Ct., at 1652–1653 (opinion of POWELL,
> J.); *id.,* at 195–196, 94 S.Ct., at 1664–1665 (opinion of
> WHITE, J.); see also *Goss v. Lopez*, 419 U.S., at 581, 95
> S.Ct., at 740. To require more than this prior to
> termination would intrude to an unwarranted extent on
> the government's interest in quickly removing an
> unsatisfactory employee.

*Id.* at 545-46.

Pursuant to *Loudermill*, Officer Stelly had written notice of the charge against him via the August 26 Notice of Investigation—his failure to comply with a lawful directive. At the September 26 interview, the Internal Affairs Officer who conducted the interview was the same officer who served him with the August 19 notice of administrative leave and details of the transport. The evidence was discussed in detail. The e-mails between Officer Stelly's attorney and the City Attorney were read into the record of the interview. Officer Stelly was asked repeatedly whether he had any questions about any of the evidence. He was asked

14

whether he was copied with the e-mails. He responded: "I don't remember, possibly." Throughout the interview, Officer Stelly and his attorney asked and answered questions. Officer Stelly knew what the charges and the evidence were, and he told his story. At the October pre-disciplinary hearing, he again had opportunity to hear and be heard. Following the decision to suspend him, Officer Stelly appealed the decision to the Board and had almost two years to prepare for the Board's review. Following the Board's review and decision to uphold the suspension, he appealed to the Fifteenth Judicial District Court in Lafayette. Following the trial court's decision to sustain the Board's suspension, he is exercising his right to appeal to this intermediate appellate court. We find that Officer Stelly's assertions regarding lack of due process have no merit.

V.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court sustaining the Board's fifteen-day suspension is affirmed. Costs of this appeal are assessed to Nolvey Stelly.

**AFFIRMED**.