McCLENDON, J.
12This is an appeal by the plaintiff from a judgment of the district court affirming the decision of the Gonzales Municipal Fire and Police Civil Service Board (the Board) that upheld his termination as "a police officer. For the following reasons, we reverse and render.
FACTS AND PROCEDURAL HISTORY
The plaintiff, Davin Miller, was a classified' employee serving with permanent status as an officer with the City of Gonzales Police Department (the Department). On August 9, 2013, Mr. Miller was notified by Chief Sherman D. Jackson of the Department that he was the subject of an administrative investigation for possible violations of the Department’s standard operating policies and that he was being placed on administrative leave with pay. The August 9, 2013 letter specifically provided:
On August 8th 2013 you were involved in an altercation with your wife, Christina Miller, at your residence. It is also alleged that you threatened your father-in-law, Scott Hughes, while in uniform.
The altercation resulted in your arrest by the Ascension Parish Sheriff Office for Simple Battery/Domestic Violence.[1]
During the investigation, Chief Jackson conducted several interviews including an interview of Mr. Miller on August 15, 2013. On August 26, 2013, Chief Jackson ordered Mr. Miller to submit to a polygraph examination to determine the truthfulness of statements made by Mr. Miller during the August 15, 2013 questioning. The polygraph was conducted by a special agent of the United States Secret Service in Me-tairie on August 28, 2013.
Chief Jackson ordered Mr. Miller to appear at a pre-disciplinary hearing on September 5, 2013, in reference to seven charges against him, which were as follows:
|al) When transporting females, it is a rule to notify dispatch via radio of starting mileage from your location to the ending location and ending mileage. This protects the officer and the integrity of this department.
2) Officer Miller left his assigned south zone area to bring two females from Park Place to West New River St without notifying his supervisor.
3) Upon transporting the females, Officer Miller decided to go into the resi *1117 dence with the females where he and another female were hand-cuffed together,
4) Officer Miller advised via radio that the scene was code 4 when he was physically involved in a disturbance and our officers were respond[ing],
5) Officer Miller stood within close proximity of his father-in-law, Scott Hughes; Officer Miller yelled in his face, called him vulgar names and tried provoking Hughes to strike him.
6) Christina Miller had evidence of a red scratch on the side of her neck and red skin on her upper chest area that is believed to have occurred when she was placed in a headlock by Officer Miller.
7) While off duty and attending the home of Scott and Beth Hughes, Officer Miller exposed his concealed weapon and replied that he didn’t have to go anywhere.
In connection with these charges, Chief Jackson cited the possible violation of ten of the Department’s Standard Operating Procedures. After the pre-disciplinary hearing, Chief Jackson notified Mr. Miller on September 9, 2013, that based on the investigation he determined that Mr. Miller had violated the Standard Operating Procedures, and he terminated Mr. Miller from the Department.
Mr. Miller timely appealed his termination to the Board. See. LSA-R.S. 33:2561. A public[1] hearing was held regarding Mr. Miller’s termination on March 20, 2014, and completed on July 24, 2014. At the completion of the hearing, the Board unanimously upheld the disciplinary action imposed by Chief Jackson. Thereafter, Mr. Miller timely appealed the Board’s decision to the Twenty-Third Judicial. District Court for Ascension Parish. The. parties submitted briefs to the district court and oral arguments were heard on March 20, 2015. The district court concluded that the Board acted in good faith for cause and upheld the Board’s decision. A judgment was signed on March 20, 2015, denying Mr. Miller’s petition for appeal.
Mr. Miller-now appeals to this Court, raising the following assignments of error:
|41. The Board erred in affirming the discipline herein as there were two different violations of the Louisiana Rights of Law Enforcement Officers while Mr. Miller was under investigation:
' a) LSA-R.S. 40:2531(B)(3). All interrogations were not recorded in full,
b) LSA-R.S. 40:2531(B)(4)(a) and (c). ’ The law enforcement officer was not allowed assistance of counsel during an interrogation.
2. The Board erred in affirming the discipline herein as the appointing authority did not prove by a preponderance of the evidence that Mr. Miller’s actions impaired the efficient operation of the public service.
3. The penalty herein was excessive.
STANDARD OF REVIEW
Louisiana Revised Statutes 33:2500 governs corrective and disciplinary actions for maintaining standards of service for fire and police departments in municipalities.[2] The grounds for which *1118 the appointing authority may remove or discipline a tenured employee are set out in LSA-R.S. 33:2500(A). Any regular employee in the classified service who feels that he has been discharged or subjected to any ■ corrective or disciplinary- action -without just-cause may demand-a hearing and an investigation by the Board to determine the reasonableness of the action. LSA-R.S. 33:2501(A). At such a hearing, the appointing authority bears the burden of proving by a preponderance of the evidence that a legal cause exists for the disciplinary action imposed.. Shields v. City of Shreveport, 579 So.2d 961, 964 (La. 1991); Beck v.; City of Baker, 11-0803 (La. App. 1 Cir. 9/10/12), 102 So.3d 887, 892, writ denied, 12-2455 (La.1/11/13), 107 So.3d 617.
| ¡/The employee may appeal any decision of the Board that is prejudicial to him. LSA-R.S. 33:2501(E)(1). The district court shall hear the matter in a summary manner, and its review of the Board’s action is limited to a finding of whether the Board’s decision was made in good faith for cause. LSA-R.S. 33:2501(E)(2) and (3); Moore v. Ware, 01-3341 (La.2/25/03), 839 So.2d 940, 945; Landry v. Baton Rouge Police Dept., 08-2289 (La.App. 1 Cir. 5/8/09), 17 So.3d 991, 995.
If based on good faith and statutory cause, a decision of the Board cannot be disturbed on judicial review. Good faith does not occur if the appointing authority acted arbitrarily or capriciously or as a result of prejudice or political expediency. Arbitrary or capricious means the lack of rational basis for the action taken. Moore, 839 So.2d at 945-46. Additionally, cause sufficient for the imposition of discipline means conduct that impairs the efficiency of the public service in which the employee is engaged. Marsellus v. Dep’t of Public Safety and Corr., 04-0860 (La. App. 1 Cir. 9/23/05), 923 So.2d 656, 660.
District and appellate courts should accord deference to a civil service board’s factual conclusions and must not overturn them unless they are manifestly erroneous. Moore, 839 So.2d at 946; Landry, 17 So.3d at 995. Moreover, as the finder of fact that personally observed the witnesses, the Board’s credibility determinations are entitled to great weight. Ha-gan, 15-0020 at p. 3, 2015 WL 5515192; James v. City of Baton Rouge Through Dept, of Public Works, 489 So.2d 1308, 1310 (LaApp. 1 Cir.1986).
DISCUSSION
Louisiana Revised Statutes 40:2531, the Police Officer’s Bill of Rights, specifies the minimum standards that apply to the investigations of law enforcement officers. Landry, 17 So.3d at 995. Pertinent to this matter are Sections B(3) and B(4)(a) and (c), which provide as follows:
B. Whenever a police employee or law enforcement officer is under investigation, the following minimum standards shall apply:
[[Image here]]
(3) All interrogations of any police employee or law enforcement officer in connection with the investigation shall be recorded in full. LThe police employee or law enforcement officer shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements upon his written request.
*1119 (4)(a) The police employee or law enforcement officer being questioned, whether as a target or as a witness in an administrative investigation, shall have the right to be represented by counsel, other representative, or both, of the police employee or law enforcement officer’s choice.
* * *
(c) The police employee or law enforcement officer’s representative or counsel shall be allowed to offer advice to the employee or officer and make statements on the record regarding any question asked of the employee or officer at any interrogation, interview, or hearing in the course of the investigation.
Additionally, LSA-R.S. 40:2531(0 provides:
C. There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.
In his first assignment of error, Mr. Miller asserts that his due process rights were violated because the investigation against him was not conducted in complete compliance with statutory requirements. Specifically, he contends that because he was not allowed to record the questioning during the polygraph and because he was denied the assistance of counsel during the polygraph, the minimum standards of LSA-R.S. 40:2531 for interrogations were not complied with, and the discipline imposed, i.e. his termination, is an absolute nullity.
Mr. Miller asserts that on the day the polygraph was administered, he asked Special Agent Samuel White if he could voice record the polygraph and if he could have counsel present. Mr. Miller was denied both requests. When taken to the room to conduct the polygraph examination, Mr. Miller signed two waivers, one of which was a Warning of Rights and Consent to Speak that included the waiver of the “right to talk to a lawyer for advice before I question you and to have him with you during questioning.” The second waiver was a Statement of Consent to take the polygraph examination. Mr. Miller proceeded to take the polygraph.- He 17emphasizes however that he did not sign a waiver of his rights to a recording of the polygraph examination. He also maintains that he had no choice but to follow the order to take the polygraph examination or be terminated.
The record indicates that the questions asked during the polygraph examination were to determine the truthfulness of statements made by Mr. Miller during Chief Jackson’s questioning of him on August 15, 2013. The relevant polygraph questions, which were transcribed and made part of the polygraph report, are as follows:
1. Are you lying about how you got that injury to your arm?; and
2. Are you lying about how you got that injury to your arm on that date?
Louisiana Revised Statutes 40:2531(B) does not define the term “interrogation.”[3] *1120 However, based in part on the definition in Black’s Law Dictionary, we have previously found that the term “contemplates the formal or systematic questioning of a law enforcement officer.”[4] Andel v. City of Mandeville, 14-1415, p. 6 (La.App. 1 Cir. 4/24/15) (unpublished), writ■ denied, 15-1018 (La.9/11/15), 176 So.3d 1041. In An-del, this Court determined that the Police Officer’s Bill of Rights did not require recordation of a conversation between a police officer and his supervisor under the circumstances presented. We accepted the factual finding that the supervisor “spoke with [the police officer] to advise him why he was recommending that disciplinary action be taken against him and merely offered [the officer] the opportunity to explain why [the supervisor] should not make that recommendation.” We also noted that the supervisor had all the infor-. mation necessary to recommend disciplinary action. We did not find that there was any evidence demonstrating that the supervisor engaged in formal or systematic questioning of the police officer. Therefore, | ^finding no interrogation, we concluded that the Police Officer’s Bill of Rights did not mandate that their conversation be recorded. Id.
However, the facts and circumstances surrounding the polygraph examination of Mr. Miller are clearly distinguishable. Initially, we recognize that a polygraph examination by its very nature is a formal or systematic questioning. Indeed, Black’s Law Dictionary (10th ed.2014) incorporates the word “interrogation” in its definition of “polygraph,” which it defines as “[a] piece of equipment used to determine whether someone is lying by measuring and recording involuntary physiological changes in thq human body, esp. sudden changes in the heart rate, during interrogation.” Further, the polygraph examination was conducted prior to any disciplinary determination being made and took place during the investigative phase of the internal inquiry into the events of August 8, 2013. While it is true that the polygraph examination consisted of only two questions and Mr. Miller was not prejudiced by the results of the examination, the questions asked of Mr. Miller were directly related to his alleged misconduct and were clearly asked to test the veracity of information obtained to support the imposition of discipline.
For these reasons, we are constrained to conclude that the polygraph examination of Mr. Miller constituted an “interrogation” under LSA-R.S. 40:2531(B)(3). Further, given that ■ Mr. Miller’s request to record the polygraph examination was denied, the disciplinary action cannot be maintained under LSA-R.S. 40:2531(C). Therefore, we find that the trial court erred in affirming the Board’s decision upholding Mr. Miller’s termination as a police officer.[5]
We recognize that the penalty of absolute nullity compels a harsh result. However, the language of LSA-R.S. 40:2531(0) is clear.[6] Any relief from the harshness of *1121 this penalty must come from the legislature.
^CONCLUSION
For the foregoing reasons, the district court’s March 20, 2015 judgment is reversed and the discipline imposed by the appointing authority against Davin Miller is an absolute nullity. All costs of this appeal are assessed to the defendants, City of Gonzales, Gonzales Department of Police, and Gonzales Municipal Fire and Police Civil Service Board, in the amount of $3,103.00.
REVERSED AND RENDERED.
McDONALD, j., concurs.

. The bill of information filed against Mr. Miller listed the charges as domestic abuse battery, a violation of LSA-R.S. 14:35.3, and resisting an officer, a violation of LSA-R.S. 14:108. On February 19, 2014, the date of the criminal trial, the charge of resisting an officer was amended to interfering with an officer, a violation of Municipal Ordinance 837. Mr. Miller was found not guilty on both charges.

. Fire and police civil service laws governing municipalities between 13,000 and 250,-000 persons are found in LSA-R.S. 33:2471 through 33:2508. The civil service laws applicable to small municipalities and for parishes and fire protection districts with persons 7,000 or more but less than 13,000 persons are found in LSA-R.S. 33:2531 through 33:2568. In both sets of statutes, the provisions pertaining to the corrective and' disciplinary action for maintaining standards of service, the appeal of such actions to the civil service board, and the right of appeal to the appropriate district court, are virtually identical. Therefore, the jurispru *1118 dence involving disciplinary aptions imposed under LSA-R.S. 33:2560 and reviewed under LSA-R.S. 33:2561 is applicable to cases involving disciplinary actions imposed under LSA-R.S. 33:2500 and reviewed under LSA-R.S. 33:2501. See Hagan v. City of Gon-tales, 15-0020, p. 2 n. 3 (La.App. 1 Cir. 9/18/15), 2015 WL 5515192 (unpublished); King v. Tangipahoa Fire Protection Hist. No. 1, 12-1130, p. 3 n. 6 (La.App. 1 Cir. 7/1/13), 2013 WL 3367569 (unpublished).

. We note that the Fire Employee’s Bill of Rights, LSA-R.S. 33:2181, specifically defines the term "interrogation.” Under that definition, interrogation is defined to include "any formal interview, inquiry, or questioning of any fire employee by the appointing authority or the appointing authority's designee regard- *1120 tag misconduct, allegations of misconduct, or policy violation.” The Police Officer’s Bill of Rights contains no such definition.

.Black’s Law Dictionary (10th Ed.2014), defines interrogation as "[t]he formal or systematic questioning of a person; esp., intensive questioning by the police, usu. of a person arrested for or suspected of committing a crime.”

. Finding merit to this assignment of error, we need not address Mr. Miller’s remaining assignments of error.

. In 2007, the legislature amended the Police Officer’s Bill of Rights to include the penalty of absolute nullity found in Section C in response to the Louisiana Supreme Court’s decision in Marks v. New Orleans Police Dept., 06-0575 (La. 11/29/06), 943 So.2d 1028. .Pri- or to amendment, the Police Officer’s Bill of Rights did not include a penalty for the failure *1121 of the investigating authority to comply with the listed statutory standards. See Marks, 943 So.2d at 1036. Accordingly, the supreme court held that the minimum standards of the Police Officer’s Bill of Rights were aspirational, and declined to impose the penalty of nullity, explaining, “we defer to the legislature and decline to impose the Draconian penalty of summary dismissal of the disciplin-aty action where no penalty is provided in the statute and no prejudice is demonstrated due to the [noncompliance with the statutory standards].” Marks, 943 So.2d at 1037. The legislature saw fit to accept the "Draconian penalty” of absolute nullity through its subsequent amendment of the Police Officer's Bill of Rights, and we must cede to the will of the legislature in this respect.