NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

*WRC lng JEW*
*JEW*
*[initials]*

FIRST CIRCUIT

2019 CW 1523

ADAM PROCELL

VERSUS

CITY OF BAKER POLICE DEPARTMENT & BAKER MUNICIPAL
FIRE & POLICE CIVIL SERVICE BOARD

*DATE OF JUDGMENT:*    NOV 1 2 2020

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
NUMBER 674284, SECTION 24, PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE R. MICHAEL CALDWELL, JUDGE

* * * * * *

Jennifer A. Motlow
Baton Rouge, Louisiana

Ashly Van Earl
Baton Rouge, Louisiana

Kenneth R. Fabre
Baker, Louisiana

Mark D. Plaisance
Marcus J. Plaisance
Prairieville, Louisiana

Counsel for Plaintiff-Appellee
Adam Procell

Counsel for Defendants-Appellants
City of Baker Police Department &
Baker Municipal Fire & Police Civil
Service Board

* * * * * *

BEFORE: WELCH, HOLDRIDGE, AND CHUTZ, JJ.

Disposition: APPEAL CONVERTED TO SUPERVISORY WRIT; WRIT GRANTED; AND JUDGMENT AFFIRMED.

**CHUTZ, J.**

The City of Baker Police Department (the Department) and the Baker Municipal Fire and Police Civil Service Board (the Board) appeal a district court judgment reversing the Board's decision to uphold the termination of Adam Procell from the Baker police force. For the following reasons, we convert the appeal to an application for supervisory writs, grant the writ, and affirm the district court's judgment.

## FACTS AND PROCEDURAL BACKGROUND

On April 14, 2017,[1] Procell was a sergeant with the Department serving with permanent status. When Procell and another officer responded to an alarm at a Baker charter school, they found an open door but no signs of criminal activity. As they were exiting the building, they heard approximately ten gunshots appearing to come from a distance of roughly fifty yards. Upon requesting backup, Procell was informed that a window had been shot out at a nearby Wal-Mart, and people were running in his direction.

Once backup arrived, Procell and other officers proceeded into nearby woods where Procell had seen someone standing earlier. They encountered several individuals, who apparently were homeless and living in the woods. The individuals were advised of their rights, detained, and transported to the Baker police station. The appellate record does not indicate whether these individuals were ever charged with any offense.

The officers also decided to canvass the neighborhood adjoining the woods. Procell approached the home of Ben Gautreaux, who is the son of East Baton Rouge Parish Sheriff Sid Gautreaux,[2] and inquired whether he had heard gunshots.

---

[1] Unless otherwise indicated, all references to dates in this opinion refer to dates in 2017.

[2] At the time of the incident, Procell had applied to and had an expectation of being hired by the East Baton Rouge Parish Sheriff's Office.

Gautreaux admitted he had fired the gunshots, stating he was shooting at a snake in his backyard. According to Procell, he examined the area Gautreaux indicated and "[t]here was a lot of dirt disturbed and some holes and things like that." At one point, Procell told Gautreaux, "I'm not going to say nothing." Procell claimed he made this statement in response to Gautreaux's comment about his messy backyard, which contained debris and other items.

In any event, Procell advised Gautreaux he had violated a city ordinance prohibiting the discharge of firearms within the city limits. He also stated to Gautreaux that "it was not a big deal" and "it's BS." Procell testified he made these remarks in order to put Gautreaux at ease. While at the Gautreaux residence, Procell received a call from Baker police chief, Carl Dunn (the Chief), and briefed him on the situation. Procell departed without arresting Gautreaux or issuing a summons. He testified no one instructed him to do so.

After speaking to the Chief a second time, Procell returned to the Gautreaux residence. Gautreaux was given a ticket for violating the firearms ordinance, the firearm he used was seized, and he was instructed to report to the police station for questioning by detectives. Gautreaux eventually was convicted of illegally discharging a firearm within city limits. No evidence was recovered linking Gautreaux to the Wal-Mart shooting, and he was not prosecuted for that offense.

Several days after the incident, on April 17,[3] the Chief ordered an internal affairs (IA) investigation of Procell, who was placed on administrative duty. The Chief believed Procell mishandled the Gautreaux incident and possibly was

---

[3] The IA investigation was conducted by Baker Police Captain Christopher Becnel. Captain Becnel testified he began gathering evidence on April 17 on the Chief's verbal instruction, but did not receive written instructions to begin the investigation until he received an email from the Chief on April 27. Based on these facts, Procell asserts the IA investigation commenced on April 17, while appellants assert it commenced on April 27. Because the result we reach would be the same regardless of whether the IA investigation commenced on April 17 or April 27, we express no opinion on the matter.

attempting to conceal any connection between Gautreaux's actions and the Wal-Mart shooting. The Department also initiated a criminal investigation of Procell's conduct shortly thereafter. On April 27, Procell was arrested for malfeasance in office and obstruction of justice. In November 2017, the district attorney declined to pursue any changes against Procell.

Following Procell's arrest, the Chief ordered on May 4 that the IA investigation be suspended. On June 19, the Chief ordered the IA investigation be resumed. At the end of the IA investigation, Captain Becnel prepared a report in which he stated, "At this time, I am unable to reach a conclusion as to what, if any, policies were violated during the course of the incident in question." The Chief disagreed with the report and conducted his own investigation of the incident. Procell was not given notice of the Chief's investigation.

On July 19, Procell was given notice of a *Loudermill*[4] hearing scheduled for August 8. The notice directed Procell's attention to the portion of the Department's policies and procedures, General Order 107, dealing with situations where a "member" has been "officially charged" with a felony. After the hearing was rescheduled to September 18, Procell was given a second *Loudermill* notice, which was identical in content to the first notice except for the date of the hearing. Following the *Loudermill* hearing, the Mayor of Baker terminated Procell's employment, effective October 11. The stated reasons for the termination were "violations of General Order 107, for failing to obey direct order(s) from Baker Police Chief Carl Dunn and for misrepresenting facts and/or making false statements to Chief Dunn."[5]

---

[4] *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

[5] The record before us does not contain a transcript of the *Loudermill* hearing. During his testimony before the Board on appeal, however, the Chief claimed Procell misrepresented facts and/or made a false statement by saying he actually saw ten holes in the ground from Gautreaux's gunfire.

4

Procell appealed his termination to the Board, which held a public hearing on the appeal on June 6, 2018. In addition to asserting a lack of good cause for the termination, Procell's counsel argued the termination was invalid because: (1) the IA investigation was not completed within sixty days as required by La. R.S. 40:2531(B)(7) (the sixty-day rule); and (2) the termination was based on grounds that exceeded the scope of the *Loudermill* notice.[6] After taking the matter under advisement, on August 30, 2018, the five-member Board upheld Procell's termination by a vote of three to two. The Board gave the following reasons for its decision:

> Mr. Procell's behavior was unprofessional and the appointing authority lost confidence in his ability to perform the job professionally and with trust. Further, the assertion that Mr. Procell made that the matter was not a serious matter in that it could not be associated with the shots fired at Walmart was based upon poor judgment. Therefore, the appointing authority's actions were taken in good faith and should be upheld.

Procell filed a notice of appeal and petition for judicial review appealing the Board's decision to the Nineteenth Judicial District Court. Following a hearing, the district court concluded the IA investigation was not completed within the required sixty-day period. The district court further opined that "there is also [a] good argument that the [*Loudermill*] notice provided one provision that was to be considered, and at the hearing[,] others were considered beyond the notice." Accordingly, the district court reversed the Board's decision upholding Procell's termination and signed a judgment on September 5, 2019, ordering Procell's retroactive reinstatement.

---

[6] The Board expressly rejected Procell's claim that the IA investigation violated the sixty-day rule. While the Board did not expressly rule on his claim that the *Loudermill* notice was inadequate, the Board's rejection of that claim is implicit in its decision upholding Procell's termination. See *Hardy v. Hardy*, 18-0487 (La. App. 1st Cir. 2/28/19), 273 So.3d 448, 454 (silence in a judgment as to any issue, claim, or demand placed before the court generally is deemed a rejection thereof).

5

The Department and the Board (collectively, appellants) took a suspensive appeal to this court. They contend the district court erred in granting relief on its own motion on the basis of an alleged violation of the sixty-day rule when that issue was not included in Procell's notice of appeal to the district court. Appellants contend the district court also erred in failing to find the sixty-day period was suspended during the pendency of the criminal investigation of Procell's conduct. Lastly, appellants assert the Board acted in good faith in affirming Procell's termination for failing to follow orders and misrepresenting facts or making false statements, and its decision should be upheld.

## APPEALABILITY OF DISTRICT COURT JUDGMENT

Even when the issue is not raised by the parties, appellate courts have a duty to determine *sua sponte* whether subject matter jurisdiction exists. *Marrero v. I. Manheim Auctions, Inc.*, 19-0365 (La. App. 1st Cir. 11/19/19), 291 So.3d 236, 238. We note that appellate jurisdiction for an appeal from a decision of a police civil service board is vested in the district court pursuant to La. R.S. 33:2501(E)(1).[7] In such cases, a court of appeal lacks appellate jurisdiction to review the district court's decision on the civil service appeal. Thus, in accordance with well-established jurisprudence, we will convert the instant appeal to an application for supervisory writs. See *Miazza v. City of Mandeville*, 10-0304 (La. 5/21/10), 34 So.3d 849 (*per curiam*); *In re Jackson*, 19-0164 (La. App. 1st Cir. 1/2/20) (unpublished), 2020 WL 42051, at *1, n.2, writ denied, 20-00202 (La. 4/27/20), 295 So.3d 403; and *Baton Rouge Police Department v. O'Malley*, 10-1386 (La. App. 1st Cir. 3/25/11), 64 So.3d 773, 774, n.1.

---

[7] The fire and police civil service law governing municipalities with populations between 13,000 and 250,000 (*i.e.*, La. R.S. 33:2471 – La. R.S. 33:2508) is applicable herein since the City of Baker had a population of 13,895 in the 2010 federal census, the latest federal decennial census for which official figures have been made public. See La. R.S. 33:2471(A).

## NOTICE OF APPEAL

To perfect an appeal of the Board's decision, La. R.S. 33:2501(E)(2) required Procell to file a written notice of appeal "stating the grounds thereof" within thirty days of the Board's decision. Because Procell did not refer to the alleged violation of the sixty-day rule in his notice of appeal, appellants contend the district court lacked authority to consider this issue, *sua sponte*, and to reverse the Board's decision on that basis.

Appellants' contention lacks merit, particularly since the principle that appeals are favored applies equally in civil service matters. *Odom v. City of Minden*, 281 So.2d 117, 119 (La. 1973); *Pailet v. Office of Health Services & Environmental Quality, Department of Health & Human Resources*, 387 So.2d 1274, 1277-78 (La. App. 1st Cir. 1980). In *Odom*, the Louisiana Supreme Court concluded the appellant's notice of appeal was adequate and expressed disfavor with the imposition of stringent, technical requirements that would make civil service appeals more onerous than appeals in ordinary matters. *Odom*, 281 So.2d at 119. The *Odom* Court held "[i]t suffices if the notice of appeal [in a civil service matter] contains a reasonably clear and concise statement of the action from which the appeal is taken." *Odom*, 281 So.2d at 119; see also *City of Houma v. Houma Municipal Fire & Police Civil Service Board*, 405 So.2d 1132, 1133 (La. App. 1st Cir. 1981), writ denied, 410 So.2d 1134 (La. 1982).

More recently, in *Moore v. Ware*, 01-3341 (La. 2/25/03), 839 So.2d 940, which involved an appeal from a decision of a municipal fire and police civil service board, the court applied the same spirit of liberality with respect to the employee's notice of appeal to the district court. Specifically, the Louisiana Supreme Court considered the employee's racial discrimination claim even after noting his petition for appeal to the district court did not raise that issue. *Moore*, 839 So.2d at 945, 949-52.

In the instant case, Procell's notice of appeal and petition for judicial review did not specifically mention the sixty-day rule or the adequacy of the *Loudermill* notice. The notice of appeal states that Procell "requests the Court ... to review the Baker Municipal Fire and Police Civil Service Board's decision of August 30, 2018, wherein it upheld [his] termination."[8] However, while the notice of appeal did not refer to the sixty-day rule or the *Loudermill* notice, these issues were raised in Procell's memorandum in support of his appeal. Thus, we disagree with appellants' contention that the district court considered these issues *sua sponte*. Procell's memorandum put appellants on notice that he continued to pursue these issues, as he had before the Board, and gave appellants an opportunity to respond thereto. Appellants were not in any manner surprised, prejudiced or adversely affected regarding these issues due to the content of the notice of appeal. <u>See</u> *Touchette v. City of Rayne, Municipal Fire & Police Civil Service Board*, 321 So.2d 62, 64 (La. App. 3d Cir. 1975).

Nor does the appellate record reveal appellants made any objection to the district court's consideration of these issues. Under the circumstances, we conclude the notice of appeal filed by Procell was adequate. It contained a clear and concise statement that he was appealing the Board's August 30, 2018 decision upholding his termination, thereby preserving all issues related to that decision.[9]

---

[8] In addition to this general statement, Procell's notice of appeal also listed a number of reasons for review of the Board's decision, including that the decision violated Procell's due process rights and was manifestly erroneous and/or clearly wrong.

[9] Similarly, in *City of Houma*, 405 So.2d at 1133, this court held a notice of appeal, which stated only that "the appeal was taken from the action of the Board in reducing the length of appellant's suspension," was adequate. In *Touchette*, the appellant's notice of appeal merely identified the municipal fire and police civil service board from which the appeal was taken, the date of the board's decision, and the district court to which the appeal was taken. The Third Circuit found the notice of appeal was sufficient, concluding it was reasonably clear and concise. *Touchette*, 321 So.2d at 64.

## DISTRICT COURT JUDGMENT

*Sixty-Day Rule*:

Appellants argue the district court erred in finding the Department violated the sixty-day rule for completion of IA investigations. Specifically, they contend the sixty-day period was suspended under La. R.S. 40:2531(B)(7) during the pendency of the criminal investigation into Procell's conduct, which was still ongoing at the time of Procell's termination.

Louisiana Revised Statutes 40:2531, the Police Officers' Bill of Rights, specifies the minimum standards that apply to the investigations of law enforcement officers. *Miller v. City of Gonzales*, 15-1008 (La. App. 1st Cir. 8/31/16), 202 So.3d 1114, 1118. Any adverse action taken against a police officer "without complete compliance" with the minimum standards set forth is an absolute nullity. La. R.S. 40:2531(C). One of the standards set forth in the Police Officers' Bill of Rights is the requirement that the investigation of an officer must be completed within sixty days of its initiation. La. R.S. 40:2531(B)(7).

The IA investigation of Procell was initiated in this case on April 17. Following Procell's arrest, the IA investigation was suspended on May 4, upon the Chief's orders, and was not resumed until June 19. The IA investigation was completed on July 19, when Procell was first given notice of a pre-disciplinary *Loudermill* hearing. See La. R.S. 40:2531(B)(7) (An investigation is complete "upon notice to the [police officer] under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint."). Thus, the total period from the initiation of the IA investigation on April 17 until its completion on July 19 clearly exceeded sixty days.

Nevertheless, there are several exceptions to the sixty-day rule. The exception appellants rely on is the exception that exists when the investigation of a police

officer concerns alleged criminal conduct.[10] In *O'Hern v. Department of Police*, 13-1416 (La. 11/8/13), 131 So.3d 29, 31-33, the Louisiana Supreme Court interpreted the last sentence of La. R.S. 40:2531(B)(7), providing that "[n]othing in this Paragraph shall limit any investigation of alleged criminal activity" to mean the sixty-day period for completion of an investigation does not apply to investigations of conduct involving alleged criminal activity. See also *McMasters v. Department of Police*, 13-2634 (La. 2/28/14), 134 So.3d 1163, 1163-64 (*per curiam*).

In the instant case, the Chief suspected Procell of concealing information about the shooting at the Gautreaux residence in order to prevent Gautreaux from being connected to the Wal-Mart shooting. Such conduct by a police officer could constitute criminal activity consisting of malfeasance in office and/or obstruction of justice. See La. R.S. 14:130.1 and La. R.S. 14:134. It was on these charges that Procell was arrested on April 27. The charges were not resolved until November 2017, when the district attorney declined to prosecute Procell.

During the criminal investigation of Procell's conduct, the Department suspended the IA investigation from May 4 to June 19, a period of forty-six days. Under the exception recognized in *O'Hern*, the sixty-day period for completion of the IA investigation did not run during this period since the Department was permitted to defer the IA investigation during the pendency of the criminal investigation. See *McMasters*, 134 So.3d at 1163-64; *O'Hern*, 131 So.3d at 31-33. Moreover, once the forty-six-day suspension period is subtracted from the ninety-three-day period between the initiation of the IA investigation on April 17 and its completion on July 19, the IA investigation was completed within sixty days. Accordingly, the district court erred in reversing the Board's decision on the basis that the sixty-day rule was violated.

---

[10] Other exceptions not applicable herein are when an extension is granted by the civil service board upon the appointing authority showing good cause and when the parties enter into a written agreement extending the time for the investigation. La. R.S. 40:2531(B)(7).

*Loudermill Notice*:

Our conclusion that no violation of the sixty-day rule occurred does not, however, automatically mean the district court's reversal of the Board's decision was incorrect. Procell also argued his termination was invalid because he was deprived of minimum due process by an inadequate *Loudermill* notice. Specifically, he complained the allegations and charges that were considered at the *Loudermill* hearing and which formed the basis for his termination exceeded the scope of the single charge raised in the *Loudermill* notice he received.

The due process clause provides that the right to life, liberty and property cannot be deprived except pursuant to constitutionally adequate procedures. U.S. Const., Amend. 14; *Cannon v. City of Hammond*, 97-2660 (La. App. 1st Cir. 12/28/98), 727 So.2d 570, 572. Since it is undisputed that Procell was a permanent civil service employee of the Department, he possessed a property right in his employment of which he could not be deprived without cause and procedural due process. La. Const. Art. 10, Sec. 8(A); *Moore*, 839 So.2d at 948; *Cannon*, 727 So.2d at 572.

One of the basic requirements of procedural due process is notice and an opportunity to respond. Before an employee with permanent status may be discharged, he is entitled to oral or written notice of the charges against him, an explanation of his employer's evidence, and an opportunity to present his side of the story. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *Cannon*, 727 So.2d at 572.

In this case, the Department herein provided Procell with written *Loudermill* notice informing him of the date of the hearing to be held concerning possible disciplinary action against him. The notice provided, in pertinent part, as follows:

> This is a formal notice directing you to appear at a Loudermill Hearing that will be conducted to determine if the possible instances of your misconduct that I **briefly summarize in this memo** may warrant

11

disciplinary action including suspension or termination from employment at City of Baker or other disciplinary action.

\*\*\*

III. VIOLATIONS OF DEPARTMENTAL POLICY AND STATE LAW:

**Your attention is directed to the Baker Police Department Policies and Procedures, specifically General Order Section 107:**

[GENERAL ORDER NO. 107 MEMBER as DEFENDANT Member as Defendant; any member of the Department who is officially charged with any felony will be immediately suspended until he or she is either exonerated or convicted of such crime. If such member is convicted of a felony, he or she will be immediately dismissed where circumstances warrant. Disciplinary action may be taken without regard to the result of criminal trials.

\*\*\*

IV. EVIDENCE TO BE CONSIDERED:

[Blank]

V. WITNESS TESTIMONY TO BE CONSIDERED:

[Blank]

V. [sic] NOTICE OF HEARING:

… At that hearing … you may present such evidence relative to the charges of alleged misconduct **as outlined above**. You are invited to produce any documents or present any evidence that you feel would contradict or mitigate any allegation made against you **as set forth in this Notice**. … This hearing will be focusing on the incident **above described**….

(Emphasis added.)

This notice was insufficient to meet the due process requirements of

*Loudermill* in that it failed to advise Procell of the alleged misconduct that formed

the basis of his subsequent termination. The notice directed Procell's attention to

the specific portion of the Department's General Order 107[11] dealing with situations

---

[11] The record does not contain a copy of General Order 107. It purportedly consists of eight pages and contains multiple provisions, including provisions applicable to insubordination and untruthfulness, as well as the provision dealing with a member who is charged with a felony. In this case, the *Loudermill* notice specifically referred only to the provision of General Order 107 dealing with a member charged with a felony. Thus, the reference to General Order 107 in the

12

when a member or an employee has been "officially charged" with a felony. The notice contains no allegation or explanation of any other charge against Procell and clearly indicates the alleged misconduct to be considered at the *Loudermill* hearing is "summarize[d]," "outlined," "set forth," or "described" in the notice. Since the only specific misconduct alleged in the notice is that Procell was charged with a felony, it was impossible for Procell to determine from the notice that he was also alleged to have been insubordinate and untruthful to a supervisor.

Despite this fact, evidence was presented at the *Loudermill* hearing that Procell had violated other provisions of General Order 107 by disobeying a direct order and misrepresenting facts and/or making a false statement to the Chief. At the hearing before the Board, Procell testified the first time he heard about these additional charges was at the *Loudermill* hearing. The only charge referenced in the *Loudermill* notice concerned a member of the Department being charged with a felony.

That charge, however, was not the basis of Procell's termination. Instead, Procell was terminated on the basis of being insubordinate and untruthful, charges he was not advised of in the *Loudermill* notice. To meet the requirements of procedural due process, an employee's right to notice and opportunity to be heard must be extended at a meaningful time and in a meaningful manner. See *Moore*, 839 So.2d at 949. Because Procell was not informed of the nature of the additional charges against him by the *Loudermill* notice, he had no meaningful opportunity to response to those charges. Since Procell was not afforded the procedural due process rights he was entitled to, his termination was invalid. Thus, while we disagree with

---

*Loudermill* notice was limited to that particular provision. The reference cannot reasonably be construed to encompass other provisions of General Order 107 that were not mentioned in the *Loudermill* notice.

the district court's determination that the sixty-day rule was violated, we conclude that the district court reached the correct result.

## CONCLUSION

For the above reasons, we convert this appeal to an application for a supervisory writ, grant the writ, and affirm the judgment of the district court reversing the August 30, 2018 decision of the Baker Municipal Fire and Police Civil Service Board. All costs of this appeal, in the amount of $1,949.00, are assessed against appellants.

**APPEAL CONVERTED TO SUPERVISORY WRIT; WRIT GRANTED; AND JUDGMENT AFFIRMED.**