STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2023 CW 0880


BECKY KRAMER WHITE

VERSUS

CITY OF MANDEVILLE

**Judgment Rendered: FEB 2 3 2024**

* * * * * *

On appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 2022-11251

Honorable Vincent J. Lobello, Judge Presiding

* * * * * *

C. Theodore Alpaugh, III   Counsel for Plaintiff/Appellant
New Orleans, LA     Becky Kramer White

Michael F. Weiner     Counsel for Defendant/Appellee
Covington, LA      City of Mandeville


* * * * * *

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

**GUIDRY, C.J.**

Becky Kramer White appeals a judgment of the district court, which affirmed a decision of the Mandeville Police Employees' Civil Service Board to uphold her termination. For the reasons that follow, we convert the appeal to an application for supervisory writ and deny the writ.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of March 28, 2017, Ms. White, then a police officer with the City of Mandeville, was found by the Ponchatoula Police Department outside of Sophie's Bar in her marked police vehicle. The Ponchatoula Police Department informed Ms. White that she could not drive the police unit home. At the same time, the Ponchatoula Police Department contacted the Mandeville Police Department, advised that they were with Ms. White, and requested that someone pick up the police unit and Ms. White because Ms. White was intoxicated.

Following advisement from the Ponchatoula Police Department, Ms. White contacted her Chief of Police, Gerald Sticker, and informed him that she needed a ride home. Ron Ruple, Assistant Chief of Police for the City of Mandeville, responded to the call from the Ponchatoula Police Department and also headed to Sophie's Bar, where Ms. White was located, to retrieve the police unit and to take Ms. White home.

Subsequently, on March 28, Ms. White was placed on administrative leave by Chief Sticker pending an internal affairs investigation "and/or" a disciplinary hearing. On April 13, 2017, Ms. White was terminated from the police department. Thereafter, Ms. White appealed her termination to the Civil Service Board, which was upheld. Ms. White then appealed to the district court, which also upheld the termination. A judgment was signed by the district court on April

28, 2023. Ms. White now appeals that judgment, and assigns the following as error:

A. The decision of the Board was not made in good faith and for just cause as the Mandeville Police Department violated La. R.S. 40: 2531 in failing to record the interrogations of Officer White and other law enforcement officers during the investigation, thus rendering the discipline an absolute nullity.

B. Officer White's case was prejudged by Chief Sticker in violation of her rights under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

C. Officer White's actions did not require discipline which was excessive and unwarranted.

D. The decision of the Board was not made in good faith and for just cause as Officer White did not violate the applicable provisions of the Mandeville Police Department Standard Operating Procedures.

E. The decision of the Board was not made in good faith and for just cause as the conclusions reached and the penalties imposed were arbitrary, unreasonable and without any basis in fact or law.

## JURISDICTION

The City of Mandeville, the appellee herein, asserts that this court lacks appellate jurisdiction to review the district court's decision. We note that appellate review of decisions by Municipal Fire and Police Civil Service Boards is specifically authorized by La. R.S. 33:2501(E), and pursuant to that provision, the district court is vested with appellate jurisdiction.[1]

In Miazza v. City of Mandeville, 10-0304 (La. 5/21/10), 34 So. 3d 849 (*per curiam*), the Louisiana Supreme Court stated that when the legislature has vested appellate jurisdiction in the district court, as in this case, a court of appeal lacks appellate jurisdiction, and the matter should be reviewed by converting the appeal to an application for supervisory writs. The Louisiana Supreme Court gave a

---

[1] We also note that the Louisiana Constitution Article V, § 10(A) provides that a court of appeal has appellate jurisdiction over "all civil matters," and that "[i]t has supervisory jurisdiction over cases which arise within its circuit."

similar directive to this court in <u>Meiners v. St. Tammany Fire Protection District #4 Board of Commissioners</u>, 10-0912 (La. 6/25/10), 38 So. 3d 359.

Since <u>Miazza</u> and <u>Meiners</u>, this court on numerous occasions has converted an appeal of a district court judgment conducting appellate review of a decision of a civil service board to an application for supervisory writs. <u>See</u> <u>In Re Jackson</u>, 19-0164, p. 2 n.2 (La. App. 1st Cir. 1/2/20), __ So. 3d __, __, <u>writ denied</u>, 20-00202 (La. 4/27/20), 295 So. 3d 403 (and the cases cited therein). We, thus, convert Ms. White's appeal to an application for a supervisory writ and review the merits.[2]

## DISCUSSION

An employee dissatisfied with a civil service board's decision may appeal to the district court. <u>See</u> La. R.S. 33:2501(E). The district court's review of the board's quasi-judicial administrative determination is an exercise of appellate jurisdiction and does not include a trial de novo. <u>Baton Rouge Police Department v. O'Malley</u>, 10-1386, pp. 4-5 (La. App. 1st Cir. 3/25/11), 64 So. 3d 773, 776. The district court's review is confined to the determination of whether the decision made by the board was made in good faith for cause. <u>See</u> La. R.S. 33:2501(E)(3); <u>Miller v. City of Gonzales</u>, 15-1008, p. 5 (La. App. 1st Cir. 8/31/16), 202 So. 3d 1114, 1118. Good faith does not occur if the appointing authority acted arbitrarily or capriciously or as a result of prejudice or political expediency. Arbitrary or capricious means the lack of rational basis for the action taken. Cause sufficient for the imposition of discipline means conduct that impairs the efficiency of the

---

[2] Ms. White's motion for appeal was filed within the thirty-day time period allowed for the filing of an application for supervisory writs under Rule 4-3 of the Uniform Rules, Courts of Appeal.

In addition, we note that in some cases this court has continued to review such district court judgments under its appellate jurisdiction.

public service in which the employee is engaged.[3] Miller, 15-1008 at p. 5, 202 So. 3d at 1118.

In addition, district and appellate courts should accord deference to a civil service board's factual conclusions and must not overturn them unless they are manifestly erroneous. Miller, 15-1008 at p. 5, 202 So. 3d at 1118. As the finder of fact that personally observed the witnesses, a board's credibility determinations are entitled to great weight. Kistler v. City of Denham Springs, 18-0249, p. 6 (La. App. 1st Cir. 2/7/19), 2019 WL 480117 *2 (unpublished).

Pertinent to this matter is La. R.S. 40:2531, the Police Officer's Bill of Rights, which specifies the minimum standards to be followed when a police employee or law enforcement officer is under investigation and faces possible disciplinary action, demotion or dismissal. See Miller, 15-1008 at p. 5, 202 So. 3d at 1118. Sections B and C of the statute provide in part as follows:

B. *Whenever a police employee or law enforcement officer is under investigation*, the following minimum standards shall apply:

(1) *The police employee or law enforcement officer being investigated shall be informed, at the commencement of interrogation, of the nature of the investigation* and the identity and authority of the person conducting such investigation, and at the commencement of any interrogation, such officer shall be informed as to the identity of all persons present during such interrogation. The police employee or law enforcement officer shall be allowed to make notes.

(2) Any interrogation of a police employee or law enforcement officer in connection with an investigation shall be for a reasonable period of time and shall allow for reasonable periods for the rest and personal necessities of such police employee or law enforcement officer.

(3) *All interrogations of any police employee or law enforcement officer in connection with the investigation shall be recorded in full.* The police employee or law enforcement officer shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements upon his written request.

(4)(a) The police employee or law enforcement officer being questioned, whether as a target or as a witness in an administrative

---

[3] The appointing authority must prove by a preponderance of evidence that a legal cause existed for the disciplinary action imposed. Sanders v. City of Mandeville Municipal Police Department, 18-0125, p. 7 (La. App. 1st Cir. 11/2/18), 2018 WL 5792011 *4 (unpublished).

investigation, shall have the right to be represented by counsel, other representative, or both, of the police employee or law enforcement officer's choice.

*  *  *

C. There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.

(Emphasis added.)

As used in the above statute, "interrogation" contemplates the formal or systematic questioning of a law enforcement officer. See Andel v. City of Mandeville, 14-1415 (La. App. 1st Cir. 4/24/15), 2015 WL 1882643 *6 (unpublished), writ denied, 15-1018 (La. 9/11/15), 176 So. 3d 1041. Further, as found in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495, 84 L. Ed. 2d 494 (1985), before any employee with permanent status may be discharged, he is entitled to oral or written notice of the charges against him, an explanation of his employer's evidence, and an opportunity to present his side of the story. To meet the requirements of procedural due process, an employee's right to notice and an opportunity to be heard must be extended at a meaningful time and in a meaningful manner. Moore v. Ware, 01-3341, p. 13 (La. 2/25/03), 839 So. 2d 940, 949.

In the matter before us, after hearing from multiple witnesses and considering numerous exhibits, the Civil Service Board apparently concluded that there was no violation of Ms. White's rights and that Ms. White's termination from the police department was warranted. Notably, the record reveals that Ponchatoula Police Department Officers Hutchinson and Sharp clearly believed Ms. White was intoxicated and had signs of impairment when she was found in her marked police vehicle at Sophie's Bar. According to Officer Hutchinson, Ms. White "was not in

6

any shape to drive." Officer Hutchinson asked Ms. White "if she had somebody that could come get her."[4]

According to Officer Sharp, "you could smell the alcohol emanating from the vehicle, and from [Ms. White's] person; once [Ms. White] exited the vehicle ... she used the vehicle the whole time to – to balance herself." Officer Sharp stated that Ms. White's eyes were "glazed over" and her speech was "slurred." He contacted the Mandeville Police Department to notify them of Ms. White's situation. He also stated that he "briefly" described the situation to Chief Sticker and Assistant Chief Ruple upon their arrival to the scene.

According to Assistant Chief Ruple, there was no investigation of the incident because "everything was based upon the observation that [he and Chief Sticker] saw at the scene." Assistant Chief Ruple explained that Ms. White was "not in a state" for formal questioning at the time of the incident, and that there was no formal questioning of Ms. White on the morning after. According to Assistant Chief Ruple, at the time of the incident Ms. White was "obviously highly intoxicated" and smelled of alcohol. Assistant Chief Ruple stated that Ms. White nearly "collapsed" when exiting the Ponchatoula police vehicle and that he had to assist her. He explained that his conversation with Ms. White from Sophie's Bar to Ms. White's home was primarily about directions to Ms. White's home. When he reached Ms. White's home and got inside he "could see alcohol remnants from bottles and things of that nature."[5] At the police department, later that morning, Assistant Chief Ruple explained that he gave Ms. White her personal property from the police vehicle and described to her what had occurred, which she claimed

---

[4] Officer Hutchinson believed Ms. White denied driving the vehicle because "at that point she didn't want to get arrested for DWI."

[5] Chief Sticker also testified that he observed alcohol bottles in Ms. White's home.

not to remember. He also told her that she should go home and that she would be "notified where things stood after this."[6]

Ms. White had little recollection of the event. According to Ms. White, she had a few drinks with friends on the evening of March 27. Later, around 11:00 p.m. as she was preparing for bed, she took a prescribed antidepressant, Zoloft, and does not remember anything that occurred afterwards. Ms. White did not remember leaving the house to go to Sophie's bar. According to Ms. White, the entire incident was a reaction to her Zoloft medication.[7]

Chief Sticker testified that there was no formal investigation in connection with Ms. White's actions, and that prior to the pre-disciplinary hearing he had not made up his mind about the discipline he would impose upon Ms. White.[8] Chief Sticker testified that he decided to terminate Ms. White because of the "seriousness of the offense." The Chief stated:

> I concluded that what she did that night was willful. ... She made a willful choice to go out that night and drink. She made a willful choice to take whatever medicine she took, disregarding whatever warning may have been on that label. ... But I also took into consideration that, not only did she put herself in danger that night, she was driving a marked police car. You're expected to respond. ... If she would have run across a situation in progress ... she was ill-equipped to handle that ... And the way she was driving, it put her at risk, it put the motoring public at risk. It was especially egregious, I found, to the citizens, because they pay us their taxpayer dollars. It's their car on the road. And you have a police officer, off-duty, intoxicated, driving it to a bar.

---

[6] Assistant Chief Ruple testified that he accessed the in-car cameras in Ms. White's police unit and reviewed Ms. White's actions from the time she left her residence to arriving at Sophie's Bar. He also stated that he spoke to the Ponchatoula police officers on the scene and that they told him what occurred.

[7] Ms. White also testified that when she met with Assistant Chief Ruple on the morning of March 28 he questioned her about the previous evening.

[8] In addition to Chief Sticker's testimony, statements made by the Chief at Ms. White's pre-disciplinary hearing and in Ms. White's termination letter further evidence that Chief Sticker considered Ms. White's side of the story before terminating her.

According to Chief Sticker, he made the decision to terminate Ms. White in the best interest of the police department and "because it did bring [the] department in disrepute, involving them in a lot of bad press."

Eugene Schwilke, PhD, who testified as an expert on the effects of drugs and alcohol, noted that Pfizer[9] advises a person not to drink alcohol while taking Zoloft. "The emphasis is, do not. ... So obviously, Pfizer has an issue with people taking Zoloft and drinking," stated Dr. Schwilke. According to Dr. Schwilke, the effects of Zoloft could be exacerbated if a person were taking Zoloft, in addition to alcohol. Dr. Schwilke further stated that when taken as prescribed Zoloft does not cause blackouts or should not cause a person to be unsteady on their feet.

Having reviewed the record of the proceedings before the Civil Service Board, we cannot say that we find error in its conclusions or those of the district court. The evidence in the record supports both a finding that there was no "formal or systematic questioning" or "interrogation" of Ms. White in connection with an investigation, and that the Ponchatoula police officers were not interrogated in connection with an investigation of Ms. White. Therefore, we cannot say that the conversations between Assistant Chief Ruple and Ms. White, or the Assistant Chief's conversations with the other officers, required recording under the Police Officer's Bill of Rights.

Similarly, where the record shows that a pre-disciplinary hearing was held, Ms. White was given an opportunity to respond to the charges against her, and the Chief testified that the outcome of the hearing was not predetermined, we cannot conclude that the Civil Service Board was clearly wrong in failing to find that Ms. White's rights were violated or that due process was not afforded to her.

---

[9] Pfizer is the manufacturer of the medication Zoloft.

Contrary to Ms. White's contentions, our review of the record supports such a finding by the Civil Service Board that, in violation of departmental policy, Ms. White was intoxicated and under the influence of alcohol in the early morning hours of March 28, 2017, when she was found by police officers in her marked police unit at Sophie's Bar. Ms. White's operation of the Mandeville police unit while intoxicated put both Ms. White and the public in danger. Her actions also exposed the City to media coverage that could have impacted the public's trust, as well as potential liability. Based on the evidence in the record, we find no error in the conclusion of the Civil Service Board that the termination of Ms. White was in good faith and for cause. We thus find that the assignments of error lack merit.

## CONCLUSION

For the above and foregoing reasons, we convert the appeal to an application for supervisory writ and deny the same, hereby affirming the district court's April 28, 2023 judgment. All costs of this writ are assessed to Becky Kramer White.

**APPEAL CONVERTED TO APPLICATION FOR SUPERVISORY WRIT; WRIT DENIED.**